612 So.2d 916 (1993)
HOUSING AUTHORITY OF NEW ORLEANS
v.
STANDARD PAINT AND VARNISH COMPANY, et al.
No. 92-CA-0328.
Court of Appeal of Louisiana, Fourth Circuit.
January 14, 1993.
Writ Denied March 26, 1993.
*917 Roy F. Amedee, Jr., O'Keefe, O'Keefe & Bernstein, New Orleans, for plaintiff/appellant.
A.R. Christovich, Jr., C. Edgar Cloutier, Ellen B. Woody, Christovich & Kearney, New Orleans, Lawrence V. Stein, William H. Voth, Maureen E. McGirr, Arnold & Porter, Washington, DC, and Donald A. Bright, Dean M. Harris, ARCO-Legal Dept., Los Angeles, CA, for Atlantic Richfield Co.
Jonathan C. McCall, Charles L. Chassaignac, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, and Paul M. Pohl, Charles H. Moellenberg, Jr., Jones, Day Reavis & Pogue, Pittsburgh, PA, for The Sherwin-Williams Co.
John C. Reynolds, Hal C. Welch, Lemle & Kelleher, New Orleans, and C. Marc Whitehead, Janie S. Mayeron, Popham, Haik, Schnobrich & Kaufman, Ltd., Minneapolis, MN, for SCM Corporation/The Glidden Co.
Frederick W. Bradley, Kathleen F. Ketchum, Liskow & Lewis, New Orleans, and Timothy D. Knaus, Kirkland & Ellis, Denver, CO, for NL Industries, Inc.
Monica T. Surprenant, Beverly K. Baudoin, Baldwin & Haspel, New Orleans, and Mary Morrissey Sullivan, Sullivan, Sullivan & Pinta, Boston, MA, for the Lead Industries Ass'n.
Stephen N. Elliott, Mickey S. deLaup, Jeffrey K. Warwick, Bernard, Cassisa, Saporito & Elliott, Metairie, for PPG Industries, Inc.
Michael C. Darnell, Adams and Reese, New Orleans, for Hoechst-Celanese Corp. and Devoe & Reynolds Co., Inc.
Before SCHOTT, C.J., and BYRNES and PLOTKIN, JJ.
*918 SCHOTT, Chief Judge.
This is a suit by the Housing Authority of New Orleans (HANO) against a number of paint manufacturers and lead pigment manufacturers for the costs associated with the removal of lead based paint from its apartments. The trial court sustained exceptions of prescription filed by defendants. HANO has appealed. The issues are whether HANO had sufficient knowledge to bring its suit before it prescribed and whether defendants engaged in any conduct with prevented HANO from bringing a timely suit.
HANO filed the present suit on April 8, 1990. This is essentially a tort claim which prescribes in one year. LSA-C.C. art. 3492. Since it concerns damage to immovable property, the one year prescription commenced to run at the time HANO acquired, or should have acquired, knowledge of the damage. Art. 3493.
HANO owns thousands of rental units in public housing projects in New Orleans. For many years it used lead based paints in the units, but in 1957 it stopped using lead based paint because of potential health problems. HANO's counsel stated at the hearing on the exceptions that HANO knew about the dangers of lead based paint in 1972 and it knew the identity of those who supplied such paint. In 1972 the legislature adopted act. 371 which required lead based paint abatement. In 1979 HANO requested financial assistance for a lead based paint removal program from the United States Department of Housing and Urban Development (HUD). In 1979 the City of New Orleans adopted an ordinance requiring abatement of lead based paint. Sidney Cates, III, who became the Director of HANO in 1980, testified that he was aware of the lead paint problem from the beginning of his administration. In 1983 HUD received a $1,250,000 federal grant for lead paint abatement and embarked upon a program which was finished in 1985. In 1984 and 1985 Cates acknowledged in correspondence with HUD that HANO had known about the lead paint problem and the need for abatement for many years. Early in the 1980's a number of HANO residents filed suit against HANO for personal injuries from lead paint in their apartments. In 1987 HANO residents filed a class action suit in federal court to compel HANO to comply with various regulations requiring lead paint abatement. This suit ended with a consent judgment against HANO on April 22, 1988. On November 20, 1989, the HANO residents filed another class action suit in the Civil District Court for the Parish of Orleans against HANO to compel lead paint abatement. On December 27, 1989, HANO responded to that suit with an answer and third party demand against the lead paint and pigment manufacturers for the cost of an abatement program; essentially the same relief which HANO is seeking in the present case. The trial court dismissed the third party demand in the state class action case and HANO has appealed from that judgment also. An opinion in that case is being rendered by this court on this date in our docket no. 92-CA-0399.
From the recitation of these undisputed facts, it is obvious that HANO had knowledge of its lead paint problem, the need for an abatement program, the likelihood of substantial damages for the implementation of the program, and the identity of the defendants who caused the problem well over a year before it filed the present suit. Consequently, it would seem that the suit was unquestionably prescribed by C.C. arts. 3492 and 3493. However, HANO makes a number of arguments to avoid prescription which will be discussed seriatim.
By its first specification of error, HANO argues that its claims of fraud and conspiracy against the defendants have not prescribed because it did not know and could not reasonably have known about this until September 1989 when discovery from the Lead Industry Association allegedly disclosed that the Association had concealed the hazardous nature of lead paint. This argument has no merit. Even assuming that defendants engaged in some sort of conspiracy to prevent HANO from knowing about the lead paint problem, the conspiracy was ineffective since HANO *919 knew all about it years before it filed suit. In order for a fraud to be actionable, it must cause damage to the plaintiff. This alleged fraud caused no damage to HANO because it knew lead paint was hazardous when it stopped using it in 1957, and it knew it had to incur expenses to abate the problem in the 1970's.
Fraud may prevent prescription from running under the doctrine of contra non valentem which provides that prescription does not begin to run on a cause of action that is not known or reasonably knowable to the plaintiff; and it does not run against one who is ignorant of the facts upon which his cause of action is based as long as his ignorance is not wilful, negligent, or unreasonable. National Union Fire Ins. Co. v. Spillars, 552 So.2d 627, 630 (La.App. 2 Cir.1989). HANO is not in a position to take advantage of this doctrine. The alleged conspiracy did not deprive HANO of the knowledge of its cause of action which it gained many years before it filed suit.
Next HANO argues that the knowledge it had of the dangers of lead based paint did not develop into an injury until it was required to embark upon a general lead paint abatement program pursuant to federal regulations in 1990. This argument is specious. Long before these regulations were promulgated, HANO knew from lawsuits filed by its tenants, city ordinances, state statutes and federal requirements that it had to incur huge costs for lead abatement. It even utilized a federal grant of $1,250,000 for this purpose as long ago as 1983 and had requested such assistance in 1979.
Next, HANO argues that defendants' conduct constituted a continuing tort. It relies on South Central Bell Telephone v. Texaco, Inc., 418 So.2d 531 (La. 1982). That case does not support HANO's position. There the court was confronted with the question of when prescription began to run on a claim by the telephone company for damages to its underground cables from leaking gasoline tanks in a filling station. The damage continued until the tanks were replaced in December 1975 so that the suit filed in October 1975 was timely even though the phone company knew about the problem in September 1974. The court held that where the cause of the injury is a continuous one giving rise to successive damages prescription dates from cessation of the wrongful conduct causing the damage. In that case such cessation occurred with the removal of the offending tanks.
That case lends no support to HANO's case. The damage here is the expense of a lead paint abatement program. The cause of the damage was the application of the paint until 1957. HANO knew about the hazard, the necessity of an abatement program and the identity of the defendants years before it filed the present suit. Unlike the South Central Bell case, there was no ongoing wrongful conduct on the part of the defendants which caused HANO's damages. The conduct occurred before 1957 and HANO knew about its problem in the 1970's.
HANO next argues that it has a claim for indemnity and/or contribution against defendants. HANO argues that prescription did not begin to run as to these claims until the consent judgment of April 1988 in federal court and that a ten year prescriptive period applies to the claims. Indemnity shifts responsibility from one who is technically or passively responsible to the one who is primarily or actively responsible for damages. Moorhead v. Waelde, 499 So.2d 387, 389 (La.App. 4 Cir. 1986). HANO as the owner and lessor of these apartments, had the primary duty to its tenants to provide them with safe conditions and to remove known hazards. Since HANO knew about this hazard by the early 1970's at the latest, it owed the duty to its tenants to make their apartments safe by removing the lead paint. C.C. arts. 2692 et seq. It cannot be said that its role vis a vis its tenants was passive or vicarious. Its action against the defendants is not one against parties directly responsible to the tenants because the defendants owed no such duty. For the same reason, HANO has no claim for contribution which arises when the parties each owe the whole performance. *920 C.C. art. 1794. Since the defendants have no contractual or statutory duty to the tenants, HANO has no right of contribution against them for the cost involved in the discharge of its duty to those tenants.
These arguments about indemnity and contribution ignore the basic proposition that HANO's claim against defendants is in law and fact a delictual claim for damage caused to its immovable property which HANO knew about almost twenty years ago. Pursuant to C.C. art. 3493, its claim prescribed long before it filed the present suit.
Accordingly, the judgment appealed from is affirmed.
AFFIRMED.