938 So.2d 219 (2006)
John JOHNSON, et al.
v.
ORLEANS PARISH SCHOOL BOARD, et al.
No. 2005-CA-1488.
Court of Appeal of Louisiana, Fourth Circuit.
August 9, 2006.
*220 John Y. Pearce, Lawrence G. Pugh, III, Michaela E. Noble, Montgomery Barnett Brown Read Hammond & Mintz, New Orleans, LA, for Edward Levy Metals, Inc. and Delta By-Products, Inc.
Thomas M. Nosewicz, Jones Walker Waechter Poitevent Carrere & Denegre, L.L.P., NEW ORLEANS, LA, for Third Party Defendant/Appellee, BFI Waste Systems of North America, Inc.
Nannette V. Jolivette, Douglas L. Grundmeyer, Jonathan C. McCall, Katherine L. Young, Chaffe McCall, L.L.P., New Orleans, LA, for Defendant/Appellant, Orleans Parish School Board.
Michael A. Chernekoff, Jones Walker Waechter Poitevent Carrere & Denegre, L.L.P., New Orleans, LA, for Third Party Defendant-Appellee, Public Belt Railroad Commission of The City of New Orleans.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge JAMES F. McKAY III and Judge LEON A. CANNIZZARO JR.).
JOAN BERNARD ARMSTRONG, Chief Judge.
The Orleans Parish School Board (the School Board), defendant and third party plaintiff, appeals from a judgment granting Exceptions of No Cause of Action and No Right of Action filed by third-party defendants, Edward Levy Metals, Inc. (Levy), Delta By-Products, Inc. (Delta), BFI Waste Systems of North America, Inc. (BFI) and the Public Belt Railroad Commission of the City of New Orleans (the Public Belt)[1]. For the reasons that follow, we affirm the trial court judgment.
The factual background of this case is fully detailed in this Court's earlier opinions in Johnson v. Orleans Parish School Board, XXXX-XXXX, XXXX-XXXX (La.App. 4 *221 Cir. 11/3/04), 890 So.2d 579 [Johnson II[2]] and in the class certification appeal, Johnson v. Orleans Parish School Board, XXXX-XXXX (La.App. 4 Cir. 6/27/01), 790 So.2d 734 [Johnson I]. The original plaintiffs in these consolidated cases are current and former residents of three housing developments in New Orleans, certain current and former owners and employees of neighboring businesses and certain current and former students and employees of Moton School, an elementary school operated at all relevant times by the School Board. The plaintiffs filed suit against the City of New Orleans, the Housing Authority of New Orleans (HANO) and the School Board alleging damages resulting from the construction of a community on a former municipal landfill site known as the Agriculture Street Landfill (ASL). According to the suit, in the 1960s and 1970s, the defendants developed the site without first having removed hazardous substances from the site and warned the plaintiffs of the existence of the hazard. By Second Amended Petition, the plaintiffs alleged that the School Board's liability devolved upon its having selected the ASL as the site for development of Moton School, an elementary school. The class plaintiffs allege that the School Board proceeded to grant construction contracts for the school "despite receiving information from engineering and soil analysis firms that soil sampling studies had confirmed the presence in the soil of numerous heavy metals, several known carcinogens and other organic materials in concentrations exceeding recommended levels for any use, including construction and operation of a school." The Second Amended Petition describes the School Board's breach of its duty to see that the ASL site was properly and adequately remediated and prepared for use as an elementary school. The class plaintiffs also claim that the School Board failed adequately to monitor and supervise its employees and contractors to ensure that soil excavated during the school's construction was completely and properly removed from the neighborhood.
Nearly ten years after the plaintiffs filed the original suit, the defendants, including the School Board, filed third party demands for direct damages, indemnity and contribution against BFI, the Public Belt, CFI Industries, Inc. (CFI), IPC, Inc., and the Port of New Orleans alleging that they or their corporate antecedents improperly hauled and disposed of hazardous materials at the landfill site prior to closure of the landfill decades prior to development of the ASL site as a school.
All third party defendants filed exceptions, inter alia, of no cause of action and no right of action that were granted by the trial court and affirmed by this Court in Johnson II. Having found that the trial court correctly granted the exceptions, this Court then considered the School Board's opportunity to amend its third party demands pursuant to La.C.C.P. art. 934, holding:
While some of the third party defendants in this case argue persuasively that the objections to the third party demands cannot be cured by amendment, out of an abundance of caution, we will allow the third party plaintiffs the opportunity to amend their third party demands. We do so with the admonition that speculating on unwarranted facts will not defeat an exception of no cause of action. [Emphasis added; citation omitted.]
*222 We then remanded the case with instructions to permit amendments of the third party demands within thirty days of this judgment and pretermitted the issue of no right of action.
Subsequently, Levy and Delta adopted and urged CFI's exceptions of no cause of action, no right of action and prescription. The trial court heard and granted the exceptions of no cause of action and no right of action. On appeal, this Court held:
We find that there is nothing material to this appeal to distinguish the allegations made against the third party defendants in Johnson II from those made against Levy Metals and Delta in the instant appeal. Accordingly, we adopt the standards regarding review of the exception of no cause of action set forth in Johnson II . . .
In the instant case, as in Johnson II and for the same reasons, "we conclude that the trial court did not err in granting the exceptions of no cause of action because the third-party demands do not allege facts sufficient to identify a legal duty owed by the third-party defendants to the plaintiffs or the third party plaintiffs." As was the case in Johnson II, there are no allegations that the third-party defendants in the instant appeal, Levy Metals and Delta, knew or should have known that an area designated as a landfill would years later become the site of a residential neighborhood and school.
Also, as was stated in Johnson II, we need not reach the issue of whether Levy Metals or Delta fall within the definition of proprietor under La.C.C. art. 667 because there is no allegation that any of the plaintiffs lived in the vicinity of the landfill during its operation.
Johnson v. Orleans Parish School Board, XXXX-XXXX, pp. 4-5 (La.App. 4 Cir. 2/16/05), 897 So.2d 812, 815-16 [Johnson III]. We remanded with the same instructions as in Johnson II.
In response to our opinions, the School Board alone filed an amended third party demand against CFI Industries, Inc., Public Belt, BFI, the Port of New Orleans, Levy, Delta and Metals Detroit, Inc.[3] On March 18, 2005, the School Board alone filed a second amended third-party demand against Levy and Delta.
In reviewing the judgment of the district court relating to an exception of no cause of action, appellate courts should conduct a de novo review because the exception raises a question of law and the lower court's decision is based solely on the sufficiency of the petition. Johnson II at p. 5, 890 So.2d at 582.
In the first amended third party demand, filed after rendition of Johnson II, the School Board alleges that:
(1) in 1949 Delta's president and one of its shareholders[4] purchased property designated as Square 1809 allegedly located within "the boundaries of the class action" where "some or all of the salvage operations occurred." Furthermore, Delta continues to own part of Square 1809;
(2) because the third party defendants improperly and/or illegally disposed of toxic *223 materials at the ASL site they should have known this activity would have caused harm to others and environmental damage through leakage, seepage, migration or other movement to surrounding properties;
(3) while the transport and disposal operation was going on (we note that this occurred decades before construction of the school) "certain of the plaintiffs . . . were living on what is now considered the ASL or what was designated on the National Priorities List as a Superfund site and so third-party defendants were on notice that this area would be developed as a residential community and, therefore, could reasonably foresee that a school could one day be built in the neighborhood and that their activity and behavior could cause harm;
(4) third party defendants should have known that fumes from natural decomposition could emanate and migrate to neighboring property or damage subsurface soil and groundwater ultimately harming human health and the environment;
(5) third party defendants owed a duty to plaintiffs and third-party plaintiffs to use the ASL only for its designated purpose, but "sneaked in" potentially toxic and/or hazardous materials, saving disposal costs.
In the second amended third party demand, filed after the rendition of Johnson III, the School Board alleged against all third party defendants collectively that:
(1) they illegally generated or transported wastes to the former ASL;
(2) the Environmental Protection Agency's inspection of samples from the former landfill detected in most samples polyaromatic hydrocarbons, lead and arsenic in concentrations above the federal guidelines;
(3) they improperly or illegally disposed of material with elevated levels of toxicity at the site and should have known that such activity would cause harm to others or to the environment;
(4) they were unjustly enriched because the improper disposal of toxic waste avoided higher costs associated with proper hazardous waste disposal;
(5) they had a duty to use the landfill properly; and
(6) they had a duty to disclose information regarding the materials that were deposited at the landfill.
The School Board reasserted and incorporated by reference all prior pleadings filed in this matter and the Third Party Demands filed by the City of New Orleans and HANO.[5]
CFI and IPC filed exceptions of no cause of action and no right of action in response to the amended third party demands against them. The trial court granted these exceptions, and we affirmed in Johnson IV, dismissing the third party demands against CFI and IPC with prejudice.[6]
We adopt and reiterate the standard regarding review of the exception of no cause of action set forth and adopted in Johnson II, Johnson III and Johnson IV. In the context of a peremptory exception of no cause of action, a cause of action *224 consists of the operative facts that give rise to a plaintiff's right judicially to assert the cause of action against the defendant. Everything on Wheels Subaru, Inc. v. Subaru South, Inc., 1991-2708 (La.1993), 616 So.2d 1234. The function of the peremptory exception of no cause of action is to test the legal sufficiency of the petition, which is done by determining whether the law affords a remedy on the facts alleged in the pleading. Johnson II, at p. 4, 890 So.2d at 582. For purposes of considering this exception, the court must accept properly pleaded facts as true. Jackson v. State ex rel. Dept. of Corrections, 2000-2882 p. 3 (La.5/15/01), 785 So.2d 803, 806. The ultimate issue to be resolved on the trial of this exception is whether, in light of the facts viewed most favorably for the plaintiff and with all doubts resolved in the plaintiff's favor, the petition states a valid cause of action. City of New Orleans v. Board of Com'rs of Orleans Levee Dist., 93-0690, p. 28 (La.7/5/94), 640 So.2d 237, 253.
Because our opinions in Johnson II and Johnson III constitute the law of the case, our essential inquiry is whether the amended third party demands allege facts that would create a duty on the part of BFI, Public Belt, Levy and/or Delta to the plaintiffs. We note the caveat announced in Johnson II: "[S]peculating on unwarranted facts will not defeat an exception of no cause of action." Johnson II, at p. 7, 870 So.2d at 583. Furthermore, The petition must set forth material facts upon which a cause of action can be based, and conclusions of law or fact will not be considered. Butler v. Reeder, 1993-764 (La. App. 5 Cir. 3/16/94), 635 So.2d 1206, 1207. Mere conclusions unsupported by facts do not set forth a cause or right of action. Montalvo v. Sondes, 1993-2813 (La.5/23/94), 637 So.2d 127, 131. Allegations purporting to be factual but which are merely self-serving conclusions must be disregarded. Delta Bank and Trust Co. v. Lassiter, 66156 (La.4/7/80), 383 So.2d 330.
Our review of the amended third party demands and the pleadings incorporated thereunto by reference, in the light most favorable to the School Board, convinces us that these pleadings add no substantial facts that would give rise to a finding of a duty on the part of these third party defendants to the plaintiffs or to the School Board.
In Johnson II, this Court made clear:
[T]he third party demands do not allege facts sufficient to identify a legal duty owed by the third party defendants to the plaintiffs or the third party plaintiffs. According to the facts alleged in the third party demands, the waste disposal or salvaging companies later acquired by third party defendants either caused or contributed to the contamination of the Agriculture Street Landfill with hazardous substances. There are no allegations that the third party defendants knew or should have known that an area designated as a landfill and used by them as such would years later become the site of a residential neighborhood and school. Accepting the allegations of fact in the third party demands as true, the third party plaintiffs have not shown that the third party defendants owed a duty to plaintiffs, and therefore, third party plaintiffs have no claim for contribution or indemnity against the third party defendants.
Johnson II, at pp. 5-6, 890 So.2d at 582.
We noted in Johnson III that the ASL was not owned by the City, HANO or the School Board at the time it was operated as a landfill. It was leased from the Lemle family. Delta operated a salvage facility *225 on a portion of the ASL property from 1949 until the ASL was closed in 1958. Levy never owned any of the landfill property. Johnson III, at p. 2, 897 So.2d at 814.
We shall consider first the individual allegations against each of the third party defendants. The School Board alleges in its original third party demand that Levy "knew or should have known of the nature, type and quantity of wastes disposed of at the Agriculture Street Dump site." It alleges that Delta, until at least 1959, "handled wastes that had been disposed of at the Agriculture Street Dump, and knew or should have known of the type, quantity and nature of wastes disposed of at the Agriculture Street Dump." It alleges that Public Belt delivered or transported waste to the ASL beginning in 1914 or earlier. It alleges that BFI was the corporate successor to companies that transported waste to the landfill in the 1950s. The original third party demand claims that these "acts, omissions and/or negligence caused or contributed to some or all of the alleged contamination of the Agriculture Street Dump site with allegedly hazardous chemicals." Simply stated, the gravamen of the original demand was that the third party defendants knew or should have known that the contamination which they caused or to which they contributed could cause damage to persons. These allegations were found to be insufficient to state a cause of action in this Court's prior opinions, and that is the law of the case.
We find no factual allegations to support the conclusory allegation that the third-party defendants illegally and/or improperly dumped toxic materials at the ASL site. While the School Board makes an argument for liability for ultrahazardous activity, the third party demands contain no factual basis for the conclusion that operating a salvage plant at a municipal landfill constitutes an ultrahazardous activity. The School Board has provided no authority for such a conclusion, and our independent research has not disclosed such statutory or jurisprudential authority. The third party demands allege that "hazardous" materials were disposed of at the ASL; however, "hazardous" does not equate to "ultrahazardous." Bartlett v. Browning-Ferris Industries, Chemical Services, Inc., XXXX-XXXX (La.App. 3 Cir. 11/6/96), 683 So.2d 1319, 1321-22; Burton v. Conoco Offshore, Inc., XXXX-XXXX (La. App. 5 Cir. 2/9/94), 631 So.2d 1374.
In the amending third party demands, the School Board does not add material facts to the deficient allegations of the original demand. The School Board provides no factual basis for its conclusory allegations that the third party defendants should have predicted somehow that a community and a school would someday be built on the ASL site and, concomitantly, that the site would not have lost its toxicity through either the decompositional forces of nature or the remediation of subsequent developers of the property for residential, commercial and educational use. The amended demand merely notes that some of the plaintiffs in unspecified numbers and at unspecified times lived on an unspecified area that was "considered" to be a part of the former ASL site. These facts do not in any way support the conclusion that the exceptors knew or should have known that there would be subsequent development of this nature. The School Board alleges no facts to indicate that any of the exceptors were in any way or to any extent involved in the decision to develop the land over the prior landfill.
We find no basis for the conclusion that the exceptors had a reasonable duty to foresee that the site would be developed without having been tested for suitability for that development. Specifically, *226 there is no duty on the part of the exceptors to prevent the School Board, a party as to which none of them had privity of any kind, from placing a school on the site of a landfill that, at the time the School Board began construction, had lain fallow for more than two decades. No one has a duty to control the conduct of a third person so as to prevent him from causing physical harm to another unless a special relationship exists. Harris v. Pizza Hut of Louisiana, Inc., XXXX-XXXX (La.9/10/84), 455 So.2d 1364, cited in Brou v. Orleans Parish Criminal Sheriff's Office, XXXX-XXXX (La.App. 4 Cir. 2/16/05), 897 So.2d 817, writ denied, XXXX-XXXX (La.5/6/05), 901 So.2d 1105. There is no allegation that any of the exceptors had such a special relationship with the School Board. Furthermore, there is nothing in the petition to suggest that the exceptors were in a position to require the School Board to engage in site remediation prior to construction of Moton School. Likewise, there is no allegation that the School Board gave notice to any of the exceptors or made demand upon any of them to identify the materials that had been transported to the ASL or to perform remedial work at the site prior to construction of the school.
The School Board contends that by alleging that "certain plaintiffs in the original demand were living on what is now considered the ASL or what was designated on the National Priorities List" the third party defendants somehow had notice that ASL would become an elementary school site. The claim against the School Board relates to the development of Moton School. The mere fact that some persons may have been living at some unspecified location "considered" part of the ASL does not lead to the conclusion that the exceptors anticipated that a school would be built where they were carrying on their operations. Furthermore, the School Board does not allege with any particularity whether any of the original plaintiffs to whom it refers lived within the borders of the ASL certified for the purposes of the class action during the class-certified time period. Clearly, there is nothing in the third party demands to indicate that prior to the closure of the ASL decades before the development of Moton School the exceptors had a legal duty to the plaintiffs to foresee that a school would be built on the site AND that the developer of the school would not properly remediate the ASL site prior to development, AND that the developer would not notify the school community of the potential hazard caused by the developer's failure to remediate the site. The School Board's allegations are precisely the sort of self-serving, conclusory statements our courts have rejected consistently as bases for a cause of action.
In Johnson II, this Court ruled that the School Board did not state a cause of action under former La.C.C. art. 667, which sets forth the reciprocal duties of vicinage. The plaintiffs' original claim was that their damage occurred when the ASL was developed as a residential community and elementary school. In response to Johnson II, the School Board made the following allegation:
On October 6, 1949, [the president of CFI's predecessor], [Delta's president and a Delta shareholder] purchased property within the boundaries of this class action, . . . where some or all of the salvage operations occurred. [Amended Third Party Demand; paragraph 3; Second Amended Third Party Demand, paragraph 4]
[W]hile the third party defendants were transporting and disposing of waste with high levels of toxins and potentially hazardous waste at the *227 ASL, certain of plaintiffs in the original demand were living on what is now considered the ASL or what was designated on the National Priorities List as a Superfund site . . . [Amended Third Party Demand, paragraph 6; Amended Third Party Demand, paragraph 7]
Article 667 of the Louisiana Civil Code establishes certain reciprocal rights and duties of neighboring landowners. It is not a general tort statute, but provides specific reciprocal rights and obligations arising as between and among owners of adjacent parcels of land. However, the amended demands do not allege facts supporting the conclusion that the School Board or any members of the plaintiff class were landowners at the time the exceptors conducted their salvage operations. Such a proprietary interest is the sine qua non of a cause of action under this Code article. See, Stone, Tort Doctrine in Louisiana: The Obligations of Neighborhood, 40 Tul. L.Rev. 701, 711 (1966); Roberts v. Cardinal Services, Inc., 266 F.3d 368, 387 (5th Cir.(La.) 2001), certiorari denied, 535 U.S. 954, 122 S.Ct. 1357, 152 L.Ed.2d 353 (2002).
We note initially that the School Board's amendment does not address its claims against Levy, BFI and Public Belt. Insofar as the amended demands seek to satisfy the Johnson II requirements with respect to Delta, we note that the amended demands do not allege that Delta's president and shareholder purchased their interests in the subject property on behalf of the exceptor, Delta. In paragraph 4 of the amended demand and paragraph 5 of the second amended demand, the School Board alleges, "Delta continues to own part of Square 1809 to this date." However, there is no allegation indicating when and how Delta obtained this ownership interest. There simply is no allegation that any of the exceptors owned the subject property during the relevant class period. The amended demands are devoid of facts to support the conclusion that any one of the exceptors, or the School board or any of the plaintiff class members during the relevant class period was an owner of the property or stood in the shoes of the owner.
In order to state a cause of action under La.C.C. art. 667, the School Board must show ownership of neighboring estates on the part of itself, the class plaintiffs and the exceptors at the relevant time. As this Court held in Johnson II:
[T]he alleged damage to the plaintiffs occurred when the landfill site was later converted to a residential community and school.

Johnson II at p. 6, 890 So.2d at 583.
This the School Board has not done.
ELM and Delta argue convincingly as well that they are not liable to the School Board for indemnity against the alleged injuries to members of the plaintiff class because these damages were caused by an unforeseen intervening event. See Gansloser v. Kansas City Southern Ry. Co., 13,036 (La.App. 2 Cir. 11/01/76), 339 So.2d 498, 500. They argue that they reasonably could not have anticipated or foreseen that decades after they had ceased any operations on or related to the ASL that third parties, for whom they had no responsibility and with whom they had no privity, would develop the former ASL into a residential neighborhood and school without having performed due diligence investigations concerning the property and subsequent adequate remediation, containment, cleanup and waste removal prior to development.
We are compelled to conclude on the face of these third party demands, that the School Board has not alleged facts to support a duty on the part of the exceptors. *228 Absent this duty, under Louisiana's duty-risk theory of negligence, the original, amended and second amended third party demands filed by the School Board against these third party defendants do not state a cause of action in negligence or for breach of the obligations of vicinage.
The School Board contends that it has stated a cause of action for contribution under La.C.C.P art. 1111 and La.C.C. art. 2324. The Code of Civil Procedure allows the defendant in a principal action by petition to bring in any person, including a codefendant, who is or may be liable to him for all or part of the principal demand. The principal demand in this case claims damages caused by the School Board's action in developing an elementary school on the ASL without having made proper due diligence inspections and tests of the environmental quality of the area and taking proper steps toward remediation of environmental problems. The exceptors did not act in concert with the School Board to develop the Moton School on the ASL property. Our review of the petition convinces us that there is no allegation that the exceptors caused the school to be developed on that site, causing damage to the class of plaintiffs.
Absent a contractual relationship between the school Board and the exceptors, under the circumstances pleaded by the School Board, there is no third party cause of action. In Wilson Industries, Inc. v. Atlas Production Services, Inc., XXXX-XXXX (La.App. 4 Cir. 6/5/96), 675 So.2d 1221, cited by the School Board, the plaintiff filed suit on open account for merchandise and/or services rendered. Atlas filed a third party demand against the owners of working interests in a mineral lease who allegedly breached a contract with Atlas for operation of oil and gas wells. According to the third party petition, the working interest owners contracted to pay for operations at the wells and to pay Atlas as operator, and the claims of Wilson, the original plaintiff, related to payment for goods and services Atlas incurred on behalf of the third party defendants, who refused to pay. We must distinguish this case on its facts, for unlike Atlas, the School Board had no contract with the exceptors in the instant case. Absent this contractual relationship, the Wilson case does not support a finding of a cause of action pursuant to La.C.C.P. art. 1111.
The School Board contends that the exceptors are solidarily liable for the damages to the class plaintiffs because "but for" their having operated or disposed of materials at ASL, the class plaintiffs would have suffered no damage. However, the third party demands, as noted hereinabove, do not allege any violation of statutory or other specific standard for disposal or transportation of non-ultrahazardous materials. To follow the logic suggested by the School Board, the manufacturer or deliverer of rat poison to a restaurant for use in vermin control would be responsible as a third party defendant for the negligent introduction of the poison by a restaurant employee into a meal served to the public. The law of this state simply does not provide for this type of liability. With respect to its claim under La.C.C.P. art. 1111, the School Board faces the same problem of lack of foreseeability that defeats its purported negligence action. Simply stated, in transporting and disposing of materials to the ASL, the exceptors could not have foreseen and had no duty to foresee or prevent the School Board's construction of a school on the ASL site without prior investigation and remediation. Absent such a duty, there can be no liability; absent liability, there can be no solidarity of obligation.
An analogous situation arose in Spells v. Housing Authority of New Orleans, XXXX-XXXX *229 (La.App. 4 Cir. 1/14/93), 612 So.2d 920. HANO tenants initiated a class action seeking a mandatory injunction to compel HANO to carry out an abatement program for lead based paint in its rental units pursuant to La.C.C. art. 2692 et. seq. (Lessor's obligation to make repairs) and various statutes and regulations. This Court affirmed the trial court's ruling dismissing a third party demand by HANO against a number of paint and lead pigment manufacturers, holding that the manufacturers did not share in that duty to the class plaintiffs. See also, Housing Authority of New Orleans v. Standard Paint and Varnish Company, XXXX-XXXX (La.App. 4 Cir. 1/14/93), 612 So.2d 916. Likewise, in the instant case, the exceptors do not share in the School Board's duty to the class plaintiffs to inspect and remediate property intended for use as a school.
Because we affirm the trial court's judgment granting exceptions of no cause of action, the exceptions of no right of action are moot.
For the foregoing reasons, we affirm the judgment of the trial court dismissing the School Board's third party demands against Edward Levy Metals, Inc., Delta By-Products, Inc., BFI Waste Systems of North America, Inc. and the Public Belt Railroad Commission of the City of New Orleans. As this Court ruled in Johnson IV, the School Board, having had ample opportunity to amend its pleadings through Johnson II and Johnson III, the dismissal is with prejudice.
AFFIRMED.
NOTES
[1] On July 22, 2005, the trial court certified its ruling as a final judgment for immediate appeal.
[2] The School Board did not seek judicial review of Johnson II, which is the law of the case. An appellate court will not reconsider its earlier ruling on a subsequent appeal in the same case. Lejano v. Bandak, XXXX-XXXX (La.12/12/97), 705 So.2d 158, 168.
[3] We are unable to determine as a certainty that this amended third party demand was filed within thirty days of our November 4, 2004 judgment. The record copy's date stamp is illegible. However, the certificate of service shows that the School Board served a copy of the demand on counsel for all parties via facsimile on December 3, 2004. The appellees do not contend that the pleading was untimely. Therefore, we shall treat the amended third party petition as timely filed.
[4] Neither the president nor the shareholder is named as a third party defendant.
[5] The third party demands filed by the City and HANO were dismissed, and neither the City nor HANO filed amended pleadings. This Court has already determined that those third party demands did not state a cause of action. Therefore, their inclusion by reference in the School Board's amended third party demand adds nothing pertinent to this appeal.
[6] Johnson v. Orleans Parish School Board, XXXX-XXXX (La.App. 4 Cir. 3/22/2006), 929 So.2d 761.