935 So.2d 691 (2006)
Susan HILL
v.
SHELTER MUTUAL INSURANCE COMPANY, Kathleen R. Cannon, William C. Richard and U.S. Agencies.
Michael W. Cannon and Randall L. Cannon
v.
Shelter Mutual Insurance Company, Kathleen R. Cannon, William C. Richard and U.S. Agencies.
Nos. 2005-C-1783, 2005-C-1818.
Supreme Court of Louisiana.
July 10, 2006.
Rehearing Denied September 1, 2006.
*692 Pujol & Pryor, Matthew W. Pryor, Baton Rouge, for Applicant in No. 2005-C-1783.
Seale, Smith, Zuber & Barnett, Brent E. Kinchen, Devin O. Ainsworth, Baton Rouge, Jonathan D. Mayeux, Lawrence W. Bell, Gonzales, Kim S. Landry; Beychok Law Firm, Benjamin D. Beychok, Baton Rouge, William C. Richard, for Respondent in No. 2005-C-1783.
Lawrence W. Bell, Gonzales, for Applicant in No. 2005-C-1818.
Pujol & Pryor, Matthew W. Pryor, Baton Rouge; Seale, Smith, Zuber & Barnett, Brent E. Kinchen, Kevin O. Ainsworth, Baton Rouge, Jonathan D. Mayeux, Kim S. Landry; Beychok Law Firm, Benjamin D. Beychok, Baton Rouge, William *693 C. Richard for Respondent in No. 2005-C-1818.
TRAYLOR, Justice.
We granted this writ application in order to consider whether the plaintiffs' claims constitute separate injuries under the language of the particular automobile insurance policy at issue, thus entitling each plaintiff to separate "per person" policy limits, subject to the aggregate "per accident" limit. We find that the policy language is ambiguous and could reasonably include injuries such as loss of love, affection, and companionship, as well as those for mental pain, suffering, and distress, if the injury rises to the level of severe and debilitating mental pain and anguish. We affirm the decision of the court of appeal in part, reverse in part, and remand the matter to the trial court for further proceedings consistent with this opinion.

FACTS and PROCEDURAL HISTORY
On January 16, 2002, Donald Cannon was a guest passenger in a vehicle driven by his wife, Kathleen Cannon, and insured by Shelter Mutual Insurance Company (Shelter). The vehicle was involved in an accident in which Mr. Cannon suffered severe injuries, from which he subsequently died.
Three of Mr. Cannon's children, Susan Hill and Michael and Randall Cannon, brought two separate lawsuits in the 23rd Judicial District Court, naming Kathleen Cannon and Shelter, among others, as defendants. These two suits were later consolidated for trial. Shelter and the plaintiffs filed cross motions for summary judgment, the sole issue being whether Shelter was liable to the plaintiffs as separately injured persons out of the "per accident" bodily injury limits, or whether plaintiffs' claims must be satisfied out of the "per person" bodily injury limits.
The trial court granted plaintiffs' motions for summary judgment, ruling that the "per accident" limits were applicable. Shelter appealed the trial court's judgment, and the court of appeal reversed, holding that plaintiffs' recovery was limited to Shelter's "per person" limit of liability. The plaintiffs filed writs of certiorari to this Court, which we granted.[1]

DISCUSSION
"Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate." Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991). A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966. Inferences drawn from the underlying facts contained in the materials before the court must be viewed in the light most favorable to the party opposing the motion. Schroeder, 591 So.2d at 345.
Plaintiffs argue in their motions for summary judgment that their injuries sustained in the wrongful death of their father constitute "bodily injury" under the terms of the Shelter policy of insurance at issue.
An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code. Louisiana Ins. Guar. Ass'n v. Interstate Fire & Casualty Co., 93-0911 p. 5 *694 (La.1/14/94), 630 So.2d 759, 763; Smith v. Matthews, 611 So.2d 1377, 1379 (La.1993); Schroeder v. Board of Supervisors of La. State Univ., 591 So.2d 342, 345 (La.1991). If the words of the policy are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent and the agreement must be enforced as written. Smith, 611 So.2d at 1379; Central La. Elec. Co. v. Westinghouse Elec. Corp., 579 So.2d 981, 985 (La.1991); Pareti v. Sentry Indem. Co., 536 So.2d 417, 420 (La.1988); see La.Civ.Code art. 2046. An insurance policy should not be interpreted in an unreasonable or strained manner so as to enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Interstate, 93-0911 p. 5, 630 So.2d at 763; Fertitta v. Palmer, 252 La. 336, 211 So.2d 282, 285 (1968). The policy should be construed as a whole and one portion thereof should not be construed separately at the expense of disregarding another. Westinghouse, 579 So.2d at 985; Pareti, 536 So.2d at 420; see La.Civ.Code art. 2050. If after applying the other general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed against the insurer who issued the policy and in favor of the insured. Interstate, 93-0911 p. 6, 630 So.2d at 764; Smith, 611 So.2d at 1379; Pareti, 536 So.2d at 420; see La.Civ.Code art. 2056.
In Crabtree v. State Farm Ins. Co., 93-0509 (La.2/28/94), 632 So.2d 736, we determined that the policy language at issue did not restrict a wife's Lejeune mental anguish claim to "per person" limits, and allowed her to collect under her own "per person" limit, subject to the policy's aggregate "per accident" limit. In that case, a wife witnessed an accident in which her husband suffered severe injuries when his motorcycle was struck by another vehicle. The husband and wife brought suit against the driver of the other vehicle and the other driver's insurance company, seeking recovery for the husband's injuries and for the wife's loss of consortium and mental anguish claims.
The insurance contract at issue in Crabtree defined "bodily injury" as "bodily injury to a person and sickness, disease or death which results from it." The insurance contract further explained that "[u]nder `Each Person' is the amount of coverage for all damages due to bodily injury to one person. `Bodily injury to one person' includes all injury and damages to others resulting from this bodily injury," and "[u]nder `Each Accident' is the total amount of coverage, subject to the amount shown under `Each Person,' for all damages due to bodily injury to two or more persons in the same accident." We determined that the definition of "bodily injury" contained in the policy was ambiguous, and that it was "reasonable to find that `bodily injury' as defined in the policy [t]herein include[d] severe and debilitating mental pain and anguish such as that suffered by Lejeune claimants." Crabtree, 632 So.2d at 745.
The Shelter policy at issue defines bodily injury using the same language as did the policy at issue in Crabtree, and, as we previously determined in Crabtree, that language is ambiguous and will be construed so as to provide coverage.
Had Shelter desired to limit its liability for "bodily injuries" to others, it could have done so by using the language we recommended in Crabtree: "Bodily injury" sustained by one person includes all injury, including bodily injury, and damages to *695 others resulting from this bodily injury.[2] Shelter failed to do so.
In Crabtree, we determined that severe and debilitating mental pain and anguish constituted "bodily injury" as defined in the insurance policy. Here, likewise, we must determine whether a wrongful death claim is a claim for "bodily injury" under the terms of the policy at issue. To do so, we must examine the elements of damages of a wrongful death claim.
The elements of damages of wrongful death are loss of love and affection, loss of services, loss of support, medical expenses and funeral expenses. Smith v. Municipality of Ferriday, 2005-755 (La. App. 3rd Cir.2/1/06), 922 So.2d 1222, 1231. The elements of damage for a wrongful death action are loss of love, affection, companionship, services, support, medical expenses and funeral expenses. See, Bujol v. Entergy Services, Inc., 00-1621, p. 46 (La.App. 1st Cir.8/14/02), 833 So.2d 947, 983; Clark v. G.B. Cooley Service, 35,675, p. 9 (La.App. 2nd Cir.4/5/02), 813 So.2d 1273, 1280. Additionally, the courts have allowed damages in wrongful death actions for mental pain, suffering, and distress resulting from the death of the victim.[3]Bryant v. Sullivan, 1997-2008 (La.App. 4th Cir.3/25/98), 712 So.2d 145, 147; Hasha v. Calcasieu Parish Police Jury, 651 So.2d 865, 876 (La.App. 3rd Cir.1995).
Damages for loss of services and support, and for funeral and medical expenses are purely pecuniary and may not reasonably be construed as bodily injury under the terms of this policy. Such damages would clearly be restricted to the "per person" limits of this policy. Damages for loss of love, affection, and companionship, however, as well as those for mental pain, suffering, and distress are mental injuries which could be termed "bodily injury" under the policy, depending on whether the damage rises to the level of "severe and debilitating mental pain and anguish." See Crabtree, 632 So.2d at 745.
The determination of the severity of mental anguish or distress resulting from the death of another is a fact question which depends upon several components, including, but not limited to, the closeness of the ties between the parties, the degree of love in the relationship, and the length of the relationship. Whether the plaintiffs' damages rise to the level of severe and debilitating pain and anguish such as to meet the definition of "bodily injury" as defined in this policy must be determined by a fact finder. For that reason, we affirm that part of the decision of the court of appeal which reverses the trial court's granting of plaintiffs' summary judgment, reverse that part of the decision of the court of appeal which finds that the "per person" limit applies to all claims, and remand the matter to the trial court for further proceedings consistent with this opinion.

DECREE
For the foregoing reasons, we affirm the decision of the court of appeal in part, reverse the decision of the court of appeal in part, and remand the matter to the trial court for further proceedings consistent with this opinion.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
VICTORY, J., dissents and assigns reasons.
*696 VICTORY, J., dissenting.
For the same reasons I think that Crabtree v. State Farm Ins. Co., 93-0509 (La.2/28/94), 632 So.2d 736, was wrongly decided, I think that this case was wrongly decided. While the majority finds itself bound by the holding of Crabtree because the policy language in both cases is the same, I would overrule Crabtree.
The Limits of Liability section in both policies provides:
The amount of bodily injury liability coverage is shown on the declarations page under "Limits of LiabilityCoverage ABodily Injury, Each Person, Each Accident." Under "Each Person" is the amount of coverage [$25,000] for all damages due to bodily injury to one person. "Bodily injury to one person" includes all injury and damages to others resulting from this bodily injury. Under "Each Accident" is the total amount of coverage [$50,000], subject to the amount shown under "Each Person," for all damages due to bodily injury to two or more persons in the same accident.
Accordingly, the single per person limits of $25,000 are for "all damage due to bodily injury to one person." The language of both the Crabtree policy and the policy in this case clearly and unambiguously define "bodily injury to one person" to include "all injury and damages to others resulting from this bodily injury." Even if mental anguish, as defined by Crabtree, is a type of bodily injury, it is clearly still included in "all injury and damages to others" under the policy. To say that "all injury and damages" excludes "bodily injury," as did the Court in Crabtree, simply ignores the word "all." In my view, both mental anguish and wrongful death damages are clearly and unambiguously included in "all injury and damages to others resulting from this bodily injury."
For the above reasons, I respectfully dissent.
NOTES
[1] Hill v. Shelter Mut. Ins. Co., XXXX-XXXX, 1818 (La.2/10/06), 920 So.2d 865.
[2] We do not imply that this language is the only possible language which would limit liability.
[3] Two of the plaintiffs, Michael Cannon and Randall Cannon, alleged in their petition that they suffered mental anguish as a result of their father's death.