(252 P.3d 640)
No. 102,541

JESSICA PARTRIDGE, Conservator, Natural Guardian, and Next Friend of Kolt Mong, and Special Administrator of the Estate of Tim Mong, Deceased, *Appellants*, v. MARILYN MONG and STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, *Appellees*.

Opinion filed April 22, 2011.

*Caleb Boone*, of Hays, for the appellants.

*Shannon D. Wead*, of Foulston Siefkin LLP, of Wichita, for appellee State Farm Mutual Automobile Insurance Company.

Before HILL, P.J., GREEN, J., and BUKATY, JJ.

BUKATY, J.: A tragic vehicle accident gave rise to this case and two others in the Gove County District Court. A vehicle being driven by Marilyn Mong struck a tractor being driven by her hus-

band, Tim Mong, resulting in Tim's death at the scene. Inside Marilyn's vehicle at the time as a passenger was Kolt Mong, stepson of Marilyn and the natural son of Tim. In one case, Kolt, through his natural mother and guardian, Jessica Partridge, filed suit against Marilyn for her negligence and requested damages for his mental distress resulting from witnessing his father die very soon after the accident. In another case, Tim's estate and his heirs filed both a survival and a wrongful death claim. State Farm Mutual Automobile Insurance Company (State Farm) provided liability coverage to Marilyn with limits of $100,000 for each person and $300,000 for each accident and defended Marilyn in both suits. State Farm has apparently paid or offered to pay the $100,000 limit for one person's injury.

In the third case, which is the subject of this appeal, Kolt filed an action for declaratory judgment against Marilyn and State Farm asking the district court to determine that State Farm's policy provided up to $100,000 in liability coverage for his mental distress claim over and above the $100,000 limit for the wrongful death and survival claims resulting from his father's death. State Farm argued that any claim that Kolt had was included in the $100,000 limit of its coverage for those wrongful death and survival claims. The court found in favor of State Farm and ruled that the policy limit of $100,000 for each person constituted the total liability insurance proceeds available for the combination of Kolt's individual claim, the wrongful death claim, and the survival claim. Kolt appeals. We conclude the district court properly interpreted the policy and affirm.

It is important to note at the outset that this case does not involve an issue as to whether Kolt has a cause of action for his mental distress. That issue resides in the negligence claim Kolt filed against Marilyn. Nor is there an issue here as to whether the State Farm policy provided coverage for it.

For the most part, the parties do not dispute the relevant facts. This appeal then requires us to decide a pure question of law involving interpretation of insurance policy language.

By way of background, Kolt sued Marilyn, as we stated, for his individual damages, alleging her negligence caused the accident.

In that case, Marilyn filed a motion for summary judgment essentially arguing that Kolt had no claim for mental distress because he suffered no physical injury. The district court denied summary judgment to Marilyn, finding that Kolt had a viable action in Kansas and it was for the finder of fact to determine the existence, nature, and extent of any emotional shock suffered by Kolt. More specifically, the court concluded that a person who contemporaneously observes the event giving rise to the injury or death of a close relative, and who suffers emotional shock but no physical injuries, might recover damages from the tortfeasor under Kansas law. As we stated, that issue is not before us in this appeal, and State Farm's counsel seemed to concede the validity of that ruling at oral argument in this appeal.

In the declaratory action case which is before us, the parties filed competing motions for summary judgment. After argument, the district court found the policy language to be clear and unambiguous. In applying the language to the facts here, it then concluded that under that language any of Kolt's individual claims resulting from witnessing his father's death were included in the $100,000 limit of coverage provided for the injury and death of his father and were not entitled to a separate $100,000 limit. We agree.

Our standard of review for cases decided on summary judgment is well established and the parties have correctly noted it in their briefs. Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. The evidence is viewed in the light most favorable to the nonmoving party. Where reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. *Bracken v. Dixon Industries, Inc.*, 272 Kan. 1272, 1274-75, 38 P.3d 679 (2002).

Since the issues raised in this case require that we interpret an insurance contract and we are in as good a position to do so as the district court, our review is de novo. See *Roy v. Young*, 278 Kan. 244, 247, 93 P.3d 712 (2004) (Where there is no factual dispute, appellate review of an order granting summary judgment is de novo.); see *Marshall v. Kansas Med. Mut. Ins. Co.*, 276 Kan. 97,

111, 73 P.3d 120 (2003) (Review of the interpretation of insurance contracts is unlimited.).

Only a few provisions of the policy are relevant to the issues here. Initially, the policy states that State Farm will pay damages for which an insured becomes legally liable because of bodily injury to others caused by accident in the use of the insured's car. It then states: " '*Bodily Injury*'—means physical bodily injury to a *person* and sickness, disease or death which results from it." The declarations page provides coverage of $100,000 for each person and $300,000 for each accident. The section dealing with the limits of liability then provides:

"The amount of bodily injury liability coverage is shown on the declarations page under 'Limits of Liability—Coverage A—Bodily Injury, Each Person, Each Accident'. Under 'Each Person' is the amount of coverage for all damages due to *bodily injury* to one *person*. '*Bodily injury* to one *person*' includes all injury and damages to others resulting from this *bodily injury*, and all emotional distress resulting from this *bodily injury* sustained by other *persons* who do not sustain *bodily injury*."

Now turning to a discussion of the issues in this appeal, it is important to first note the precise nature of the damage claim Kolt puts forth. In denying the summary judgment motion filed by Marilyn in Kolt's underlying tort case, the district court found as an undisputed fact that Kolt suffered no physical injuries as a result of the accident. Kolt acknowledges that he suffered no immediate bodily injury and that he was not struck in any fashion. In his brief he states that he did not have any "immediate physical injuries from any percussive impact resulting from any physical force at play at the scene of the impact." What he makes a claim for is the severe mental anguish with physical bodily manifestations he suffered as a result of witnessing his father's death.

In this appeal, Kolt then argues, as he did to the district court, that this claim constitutes a separate and independent injury "resulting from" the death of his father that entitles him to an additional $100,000 per person coverage over and above the $100,000 available for the wrongful death and survival claims that are covered under the State Farm policy. Next, he argues that separate affidavits attached to his brief establish that disputed facts exist

which preclude summary judgment. Finally, he argues that the Kansas Automobile Injury Reparations Act (KAIRA), K.S.A. 40-3101 *et seq.*, mandates there be coverage for his claim and the district court's decision amounted to violation of his constitutional rights to equal protection of the laws under the United States and Kansas Constitutions.

State Farm, without disputing the validity of Kolt's underlying damage claim, focuses on the policy language and argues that it plainly and unambiguously does not provide for an additional $100,000 for the claim. It points out there are no Kansas cases on point that support Kolt's argument and cases from other jurisdictions containing similar facts and policy language support the district court's decision in this case. Not surprisingly, State Farm denies there are any disputed facts that preclude summary judgment or that any equal protection violation occurred.

We note that Kolt spent much of his brief and argument pointing out that several states recognize that a person, even though he or she has suffered no physical injury, still has a cause of action for mental distress that he or she suffers from witnessing an event that caused injury or death to a family member or loved one. The effort misses the essence of the issues in this appeal, however. As we have stated, the core issue boils down to determining the amount of coverage that exists for such a mental distress claim under the relevant policy and not whether the plaintiff has a cause of action for such.

Kolt acknowledges there are no Kansas cases on point. He points us to cases from other jurisdictions that he urges support his position.

The only case Kolt cites with the same policy language as that in State Farm's policy here is *Hebert v. Webre*, 971 So. 2d 1238 (La. App. 2007) (*Hebert I*), a decision from the Louisiana Third Circuit Appellate Court. However, Kolt fails to mention that *Hebert I* was overturned a year later by the Louisiana Supreme Court in *Hebert v. Webre*, 982 So. 2d 770 (La. 2008) (*Hebert II*). The case involved a wife's claim for mental distress damages because she had witnessed the severe injuries her husband suffered. She argued that the relevant insurance policy provided additional cov-

erage to her for those injuries over and above the limit provided for the husband's injuries. The Louisiana Supreme Court ruled in favor of the insurer and distinguished the case from previous cases in which the policy had not defined bodily injury as *physical* bodily injury. In so doing, the *Hebert II* court stated:

"The first distinction is that 'bodily injury' is defined in this policy as *'physical* bodily injury to a person and sickness, disease or death which results from it [emphasis added]' whereas in *Crabtree [v. State Farm Ins. Co.*, 632 So. 2d 736 (La. 1994)] and *Hill [v. Shelter Mut. Ins. Co.*, 935 So. 2d 691 (La. 2006)], 'bodily injury' was defined as 'bodily injury to a person and sickness, disease and death which results from it.' In *Crabtree*, this Court stated that 'if the definition [of "bodily injury"] was intended to cover only external, physical injuries, then "bodily injury" easily could have been defined in a more restrictive fashion through the use of such words,' *i.e.*, 'external, physical.' State Farm followed the suggestion of *Crabtree* and amended its definition of 'bodily injury' to require that such injury be 'physical' in nature to differentiate it from a mental or emotional injury. . . . [W]e find that the addition of the word 'physical' is sufficient under *Crabtree* to differentiate a 'bodily injury' sustained in a physical manner, which would be entitled to separate per person limits, from an injury which is emotional in nature and, though might have physical consequences, is not a 'physical' bodily injury.

"The second major distinction is found in the definition of **'bodily injury** to one **person**.' In *Crabtree* and *Hill*, 'bodily injury to one person' was defined to include 'all injury and damages to others resulting from this bodily injury.' This State Farm policy defines **'bodily injury** to one **person'** to include 'all injury and damages to others resulting from this **bodily injury**, and all emotional distress resulting from this **bodily injury** sustained by other persons who do not sustain **bodily injury**.' (Underline added.)

. . . .

". . . As we explained in *Hill*, the type of injuries suffered by a wrongful death plaintiff are emotional distress type injuries. In addition, under the terms of this policy, even if 'bodily injury' could be interpreted to include emotional distress which manifests itself physically, the policy includes 'all emotional distress damages' in the 'Each Person' limit, not just ones that do not manifest themselves physically or do not rise to the level of severe and debilitating." 982 So. 2d at 776-78.

None of the other cases cited by Kolt involve policy language similar to State Farm's policy here. For example, in *State Farm Mut. Auto Ins. v. Connolly*, 212 Ariz. 417, 132 P.3d 1197 (2006), the policy section stating the limits of coverage for each bodily injury did not define such bodily injury as *physical* bodily injury. Nor did the policies involved in *Crabtree* or *Pekin Ins. Co. v. Hugh*,

501 N.W.2d 508 (Iowa 1993). Neither did the policies in those cases provide that: " '*Bodily injury* to one *person*' includes all injury and damages to others resulting from this *bodily injury*, and all emotional distress resulting from this *bodily injury* sustained by other *persons* who do not sustain *bodily injury*."

In contrast to the absence of case law from Kansas and other states to support Kolt's position, several cases from other jurisdictions have found in favor of the insurer under the same or similar facts and policy language.

In *Estate of Gocha v. Shimon*, 215 Wis. 2d 586, 573 N.W.2d 218 (1997), four members of a family witnessed the accidental death of another family member who was riding a bike. The driver who struck the decedent was insured under a policy with virtually the same language that exists in this case. The district court granted summary judgment to the insurance company, finding all claims were subject to the each person limit of $100,000, rather than the each accident claim of $300,000.

"The Gochas correctly point out that the *Bowen* [*v. Lumbermens Mutual Cas. Co.*, 183 Wis. 2d 627, 517 N.W.2d 432 (1994)] court recognized the tort of negligent infliction of emotional distress in instances where a family member witnesses the death of another family member. [Citation omitted.] That the Gochas have suffered *Bowen*-type emotional injuries is not really contested; it however begs the real controversy . . . .

. . . .

"The bodily injury to Klye includes *all* injury and damages *to others* resulting from Kyle's bodily injury. *But for* the bodily injury to Kyle, the Gochas would not have suffered any emotional injuries. Their injuries are the natural and probable consequence of witnessing the accident that killed Kyle." 215 Wis. 2d at 591-93.

See *Allstate Ins. Co. v. Tozer*, 392 F.3d 950 (7th Cir. 2004); *State Farm Mut. Auto. Ins. Co. v. Mitchell*, No. 04-142-B-W, 2005 W.L. 58100 (D. Me. 2005) (unpublished opinion); *Allstate Ins. Co. v. Clohessy*, 32 F. Supp. 2d 1333 (M.D. Fla. 1998); *Galgano v. Metropolitan Property*, 838 A.2d 993 (Conn. 2004); *First Ins. Co. of Hawaii v. Lawrence*, 881 P.2d 489 (Hawaii 1994); *McNeill v. Metropolitan Property & Liability Ins. Co.*, 420 Mass. 587, 650 N.E.2d 793 (1995); *Farm Bureau Ins. of Nebraska v. Martinsen*, 659 N.W.2d 823 (Neb. 2003); and *Bowman v. Holcomb*, 614 N.E.2d 838 (Ohio App. 1992).

In essence, Kolt argues he suffered mental distress from witnessing his father's death. He does not argue that he suffered mental distress from a bodily injury he himself sustained in the accident. As such, the damages Kolt is entitled to claim for such mental distress result from the physical bodily injury that caused his father's death. We conclude then, as did the courts in the cases cited above, that under the clear and unambiguous terms of State Farm's policy, those claimed damages are included within the limits of coverage provided for the injury that caused his father's death.

Kolt next argues that separate affidavits of mental health professionals attached to his brief establish that disputed facts exist which preclude summary judgment. Specifically, Kolt urges they "prove independent bodily injury as defined by the policy which has become manifest not through physical impact but as an outgrowth of [his] emotional distress." The argument simply rephrases and refocuses his position. He is still claiming damages for mental distress with physical manifestations that all resulted from him witnessing the bodily injury that his father suffered and died from. While the affidavits establish he suffered significant mental distress, they afford him no support for his claim that the State Farm policy provides him an additional $100,000 in coverage over and above the $100,000 provided for the injuries to his father.

Finally, Kolt argues his evidence of the physical manifestations of his emotional and psychological injuries were sufficient outgrowths of the mental anguish suffered during and after the accident to support recovery for pain and suffering under the KAIRA. Kolt argues that by failing to allow recovery under the KAIRA, the district court's decision violated his constitutional right to equal protection of the laws under the United States Constitution and the Kansas Constitution Bill of Rights. Kolt submits that he raised these issues during argument on the summary judgment motion and/or his motion to alter or amend judgment.

The argument fails. First, we find nothing in the record indicating that Kolt raised this issue to the district court. Significantly, the record does not contain a transcript of the arguments at the hearing on the motion to alter or amend judgment where Kolt contends that discussion of this issue apparently occurred. Constitutional

issues not raised before the district court cannot be raised on appeal. *Miller v. Bartle*, 283 Kan. 108, 119, 150 P.3d 1282 (2007). More importantly, this argument is premised on the fact that the policy does not provide coverage for Kolt's mental distress claim. In fact, the district court did not address this point, and State Farm does not dispute there was coverage. It argues only that the amount available for Kolt's individual claim is included in the $100,000 available for the injury and death of his father.

The district court correctly ruled as a matter of law in State Farm's favor on this last point. The plain language of the policy provides $100,000 for the wrongful death and survival claims filed by Tim's estate, and his heirs and any mental distress damages Kolt suffered from witnessing his father's injuries and death are included in that $100,000 limit.

Affirmed.