PAUL A. BONIN, Judge.
11 National Union Fire Insurance Company of Pittsburgh, Pennsylvania, Republic Insurance Company, and United States *1178 Fire Insurance Company appeal the partial summary judgment of the trial court finding that the Personal Injury Liability coverages provided by the appellants’ individual policies have no aggregate limits.[1] The trial court reasoned that because each policy is ambiguous as to whether it contains an aggregate limit for PIL coverage and because ambiguity in insurance policies should be construed against the insurer and in favor of coverage, all three of the policies should be read to provide PIL coverage without any aggregate limit.
The decision below granted the class-action plaintiffs’ motions for partial summary judgment seeking a declaration that none of the appellants’ policies contains an aggregate limit for PIL coverage.
After our de novo review, we find that the policies of National Union and Republic are ambiguous regarding their limitations of PIL coverage; we, however, disagree with the trial court’s finding that there is no genuine issue of material fact raised by that ambiguity. Because there is a genuine issue of material fact, we find |2that summary judgment is improper. The policy of U.S. Fire, on the other hand, unambiguously provides PIL coverage without limitation. But reformation may be sought when the policy clearly does not reflect the intent of the parties. Because the intent of the parties is a genuine issue of material fact, summary judgment as to U.S. Fire is improper as well.
Accordingly, we reverse the trial court’s judgment and remand the matter to the district court for further proceedings, including trial of the issues presented concerning the existence or amount of aggregate limits.
Below we explain our reasoning in greater detail. We first set out the facts underlying the plaintiffs’ claims. Next, we set forth this matter’s lengthy procedural history. Following a discussion of the applicable law, we will examine the policies at issue to determine whether the trial court correctly ruled that each of the three lacks any type of aggregate limit on PIL coverage.
I
The origin of this case dates back to the early 1900s, when the land underlying this litigation was first leased by the City of New Orleans and used as a garbage dump known as the Agriculture Street Landfill. Johnson v. Orleans Parish Sch. Bd., 06-1223, p. 1 (La.App. 4 Cir. 1/30/08), 975 So.2d 698, 703, writs denied, 08-0607, 08-0664, 08-0671, 08-0672, 08-0673, 08-0674, 08-0675, 08-0682 (La.6/27/08), 983 So.2d 1289-1291 (Johnson VI). The regular use as a landfill ceased in 1958, but the site reopened in 1965 as a place to dispose of debris from Hurricane Betsy. Id.
In 1967, the Housing Authority of New Orleans and the City of New Orleans planned a residential development, known as Press Park, in the Landfill area. Id. Part of the new project gave residents the option of a “turnkey” program, |3whereby the residents could become owners of their town home units. Id. The “turnkey” program allowed a portion of the tenants’ rent to be put into an escrow account until the residents had amassed enough money to purchase the unit, at which time the title to the property would be transferred to the resident. Id. At no time were the residents or purchasers of property in the Press Park development notified that they were renting or purchasing land that was formerly a landfill, nor were any remedial measures undertaken to mitigate the effects of building on a landfill. Id.
*1179 The City tested the soil before constructing the next development, Gordon Plaza. Id. This time the City put one foot of clean soil on top of the ground before it built the single-family houses. Id. Purchasers of the homes were not informed that their homes were on the site of a former landfill. Id.
The Louisiana Department of Health and the Agency for Toxic Substance Disease Registry, a federal agency under the United States Department of Health and Human Services, conducted a study of the children in the Landfill area between 1985 and 1986 to determine “whether there was an increased incidence of elevated blood lead levels.” Id. at 704. The residents were never told that their children had been exposed to excess amounts of lead. Id.
The Environmental Protection Agency tested the site in 1986 to determine whether the Landfill neighborhood was contaminated. Id. The residents were never given the result of that test. Id. The EPA returned in 1998 to study the soil once again, and it determined that more than one hundred forty toxic and hazardous materials, more that forty of which are known to cause cancer in humans, were found in the soil. Id. At that time, the EPA told the residents to take Lprecautions against having any contact with the soil. In 1994, the EPA listed the Landfill area as a “Superfund” site. Id.
The EPA financed a twenty million dollar remediation project from 2000 to 2001. Id. The EPA project removed the top two feet of soil, replaced the removed soil with clean soil, and placed a semi-permeable “felt-like” barrier in between the old and new layers of soil. Id. No remediation was performed underneath any streets or buildings, and only one foot of soil could be replaced in some areas. Id. After the EPA completed the remediation project, the residents were given certificates showing that their property had been partly remediated. Id. The residents now have permanent restrictions imposed on the use of their property and have a duty to maintain the clean layer of topsoil as well as the semi-permeable barrier underneath it. Id.
The present controversy centers on the policies issued by National Union, Republic, and U.S. Fire to HANO and in effect at times the class members were exposed to the harmful soil. The record indicates that the three insurers insured HANO successively. Specifically, U.S. Fire insured HANO from May 30,1978 to May 30,1981. Next, National Union insured HANO from May 30, 1981 to May 30, 1984. Lastly, Republic insured HANO from May 31, 1984 to May 31,1985.[2]
II
In this Part we set out this matter’s lengthy procedural history. The plaintiffs timely filed suit on August 31,1993. Since then, seven appeals have been taken.
|fiIn the first appeal, Johnson v. Orleans Parish Sch. Bd., 00-825, 00-826, 00-827, 00-828 (La.App. 4 Cir. 6/27/01), 790 So.2d 734, writs denied, 01-2215, 01-2216, 01-2225 (La.11/9/01), 801 So.2d 378, this court affirmed the trial court’s certification of the class.
After the class was certified, the School Board, the City of New Orleans, and HANO brought third-party demands against additional entities, alleging that the third parties had improperly dumped hazardous waste in the landfill, and, therefore, should be responsible for any injuries *1180 suffered by the plaintiffs. The trial court dismissed the third-party defendants on exceptions of no cause of action and no right of action. The School Board, the City of New Orleans, and HANO appealed that decision in Johnson v. Orleans Parish Sch. Bd., 03-0828, 03-1573 (La.App. 4 Cir. 11/3/04), 890 So.2d 579 (Johnson II). This court affirmed the decision of the trial court and remanded with the instruction that the defendants may amend their third-party demands within thirty days. Id., 890 So.2d at 583. In the third appeal, Johnson v. Orleans Parish Sch. Bd., 04-1352, p. 3 (La.App. 4 Cir. 2/16/05), 897 So.2d 812, 815 (Johnson III), this court addressed issues similar to those found in Johnson II. There, two third-party defendants, who had not initially filed exceptions along with the other third-party defendants in Johnson II, adopted the arguments of one of the third-party defendants who had been dismissed in Johnson II. This court in Johnson III affirmed and remanded the dismissal of third-party defendants just as it had done in Johnson II.
The School Board, the City of New Orleans, and HANO amended their third-party demands, and the third-party defendants again filed exceptions of no | flcause of action and no right of action. Johnson TV and Johnson V[3] affirmed the trial court’s dismissals of the third-party defendants.
Trial was held from January 7, 2005 to March 11, 2005. The trial court rendered judgment on January 12, 2006 in favor of the plaintiff class and against HANO and its insurers, finding the insurers’ PIL coverages to be applicable to the damage claimed by the plaintiffs.[4] Johnson VI at 714. That judgment also required HANO’s insurers to pay directly to the class whatever was owed by HANO and gave the insurers the right of contribution against HANO. Id.
After this court’s affirmation of the insurers’ liability, Republic filed a separate suit in federal court seeking a judgment declaring Republic’s PIL coverage to have an aggregate limit of one million dollars. Because Republic named only HANO as a defendant in the federal court suit, the federal court did not hear the plaintiffs’ arguments in favor of a finding of no aggregate limit. On July 28, 2009, the federal district court declared that the PIL coverage in Republic’s policy had an aggregate limit of one million dollars and capped Republic’s liability for PIL claims at one million dollars. The state trial court’s judgment declaring Republic’s PIL coverage to be without limit did not mention the federal court judgment.[5]
The current appeal, Johnson VII, does not concern the existence, vel non, of coverage because that issue was resolved in Johnson VI; rather, this appeal concerns whether there is an aggregate limit to the established coverage. The trial court, in its February 26, 2010 judgment, found each of the insurance policies to be 17ambiguous. The trial court reasoned that “if the Plaintiffs are correct that the policies are ambiguous, then they are also correct that the policies contain no aggregate limit.”
Ill
In this Part we address the law governing motions for summary judgnent and *1181 the principles of insurance contract interpretation.
A
A motion for summary judgment will be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law.” La. C.C.P. ÁRT. 966(B). This court reviews a grant or denial of a motion for summary judgment de novo. Bonin v. Westport Ins. Corp., 05-0886, p. 4 (La.5/17/06), 930 So.2d 906, 910. Thus, this court asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Id,.
In determining whether an issue is genuine, a court should not consider the merits, make credibility determinations, evaluate testimony or weigh evidence. A fact is material if it is one that would matter at trial on the merits. Put differently, a fact is material when its existence or nonexistence may be essential to plaintiffs cause of action under the applicable theory of recovery. Facts are material if they “potentially insure or preclude recovery, affect a litigant’s ultimate success, or determine the outcome of the legal dispute.” Woodland Properties, L.L.C. v. New Orleans Sewerage and Water Bd., 10-0331, p. 3 (La.App. 4 Cir. 9/29/10), 49 So.3d 443, 445. Simply put, a material fact is one that would matter on the trial on the | ^merits. “Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of trial on the merits.” Suire v. Lafayette City-Parish Consol. Govt., 04-1459, p. 11 (La.4/12/05), 907 So.2d 37, 48. In order to determine whether a fact is material, a reviewing court must evaluate the substantive law that governs the litigation at issue. Woodland, Properties, 10-0331, p. 4, 49 So.3d at 445.
A “genuine issue” is a triable issue, that is, an issue on which reasonable persons could disagree. Jones v. Estate of Santiago, 03-1424, p. 6 (La.4/14/04), 870 So.2d 1002, 1006. In determining whether an issue is genuine, courts cannot consider the merits, make credibility determinations, evaluate testimony or weigh evidence. Formal allegations without substance should be closely scrutinized to determine if they truly do reveal genuine issues of fact. Windham v. Murray, 06-1275, p. 3 (La.App. 4 Cir. 5/30/07), 960 So.2d 328, 331.
B
Interpretation of an insurance policy usually involves a legal question which can be resolved properly in the framework of a motion for summary judgment. Bonin, 05-0886, p. 4, 930 So.2d at 910. In analyzing insurance policies, certain elementary legal principles apply. First and foremost is the rule that an insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code. LeBlanc v. Aysenne, 05-0297, p. 3 (La.1/19/06), 921 So.2d 85, 89. According to the rules of construction, the responsibility of the judiciary in interpreting insurance contracts is to determine the parties’ common intent. See, La. Civil Code Art. 2045; Edwards v. Daugherty, 03-2103, p. 11 (La.10/1/04), 883 So.2d 932, 940. Courts begin their analysis of the parties’ common intent by examining the words of the | insurance contract itself. See, La. Civil Code Art. 2046; Sims v. Mulhearn Funeral Home, Inc., 07-0054, p. 7 (La.5/22/07), 956 So.2d 583, 589. In *1182 ascertaining the common intent, words and phrases in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning, in which case the words must be ascribed their technical meaning. See, La. Civil Code Art. 2047; Edwards, 03-2103, p. 11, 883 So.2d at 940-941.
Further, an insurance contract is to be construed as a whole, and each provision in the contract must be interpreted in light of the other provisions. One provision of the contract should not be construed separately at the expense of disregarding other provisions. See, La. Civil Code Art. 2050; Hill v. Shelter Mutual Insurance Co., 05-1783, p. 3 (La.7/10/06), 935 So.2d 691, 694. Neither should an insurance policy be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Edwards, 03-2103, p. 11, 883 So.2d at 941.
When the words of an insurance contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent and courts must enforce the contract as written. See, La. Civil Code Art. 2046; Hill, 05-1783, p. 3, 935 So.2d at 694. Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy’s provisions are couched in unambiguous terms. Cadwallader v. Allstate Insurance Co., 02-1637, p. 4 (La.6/27/03), 848 So.2d 577, 580. The rules of contractual interpretation simply do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity [inwhere none exists or the making of a new contract when the terms express with sufficient clarity the parties’ intent. Edwards, 03-2103, p. 12, 883 So.2d at 941.
Nevertheless, if, after applying the general rules of contractual interpretation to an insurance contract, an ambiguity remains, the ambiguous contractual provision is generally construed against the insurer and in favor of coverage. See, La. Civil Code Art. 2056; Sims, 07-0054, p. 9, 956 So.2d at 589-590. Under this rule of strict construction, equivocal provisions seeking to narrow an insurer’s obligation are strictly construed against the insurer. Cadwallader, 02-1637, p. 4, 848 So.2d at 580. Similarly, in construing the language of an exclusionary clause in an insurance policy, courts must look to the general rule that exclusionary clauses are to be narrowly construed against the insurer and in favor of coverage. Pizzetta v. Lake Catherine Marina, LLC, 08-0648, p. 3 (La.App. 4 Cir. 9/17/08), 995 So.2d 26, 29. This strict construction principle applies, however, only if the ambiguous policy provision is susceptible to two or more reasonable interpretations; for the rule of strict construction to apply, the insurance policy must be not only susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable. Edwards, 03-2103, p. 12, 883 So.2d at 941.
The policies at issue in the present case are comprehensive general liability policies. Liability under a comprehensive liability policy is only as provided in the policy and attached endorsements. Zeitoun v. Orleans Parish School Bd., 09-1130 (La.App. 4 Cir. 3/3/10), 33 So.3d 361, 365. The parties are free to select the types of risks to be covered. Id. An insurer, like other individuals, is entitled to limit its liability and to impose and enforce reasonable conditions upon the policy obligations it contractually assumes; it may change or amend the coverage |nprovided by the policy by an endorsement attached *1183 to the policy as long as the provisions and/or endorsements do not conflict with statutory law or public policy. Louisiana Ins. Guar. Ass’n. v. Interstate Fire & Cas. Co., 93-0911, p. 6 (La.1/14/94), 630 So.2d 759, 763. If an endorsement is attached to the policy and the policy and endorsements are parts of the same contract, the endorsement becomes part of the contract, and the two must be construed together. Zeitoun, 09-1130, p. 4, 33 So.3d at 365. If a conflict between the endorsement and the policy exists, the endorsement prevails. Id. If coverage is provided in the policy, but then excluded in the endorsement to the policy, coverage will be excluded. Id.
The interpretation of an insurance policy is normally a question of law. Armenia Coffee Corporation v. American National Fire Ins. Co., 06-0409, p. 6 (La.App. 4 Cir. 11/21/06), 946 So.2d 249, 253. Likewise, the determination of whether a contract is clear or ambiguous is a question of law. Edwards, 03-2103, pp. 12-13, 883 So.2d at 941. Moreover, when a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law and summary judgment is appropriate. Sims, 07-0054, p. 10, 956 So.2d at 590. On the other hand, when a contract is determined to be ambiguous, an issue of material fact exists, and the matter is not ripe for summary judgment. Total Minatome Corp. v. Union Texas Products Corp., 33,433 (La.App. 2 Cir. 8/23/00), 766 So.2d 685.
IV
With the foregoing basic principles in mind, we turn in this Part to an examination of each of the policies at issue to determine whether the trial court correctly ruled that each of the three lacks any type of aggregate limit on personal injury liability coverage.
JjaA
Here we first examine the policy issued by National Union to RANO. The PIL portion of National Union’s policy with HANO provides the following provision regarding its limitation of liability:
III. LIMITS OF LIABILITY; INSURED’S PARTICIPATION
Regardless of the number of (1) insureds under this policy, (2) persons or organizations who sustain personal injury, or (3) claims made or suits brought on account of personal injury, the total limit of the company’s liability under this coverage for all damages shall not exceed the limit of personal injury liability stated in the schedule as “aggregate.”
The policy’s schedule is divided into two columns; “Coverage” and “Limits of Liability.” The only dollar amount printed on the schedule is “500,000” and is placed under the column titled “Coverage,” and to the immediate left of the column titled “Limits of Liability,” which contains the pre-printed words “thousand dollars aggregate.”
The plaintiffs argued to the trial court that the placement of the number on the schedule creates an ambiguity in that a reasonable insured could look at the schedule and conclude that the policy’s PIL coverage had no aggregate limit, or that it had a coverage limit of $500,000.00 per occurrence. National Union argued that its policy unambiguously provided PIL coverage subject to an aggregate limit of $500,000.00. In the alternative, National Union asserted that if the trial court were to find the policy ambiguous, discovery and expert testimony would be needed to ascertain why the number 500,000 was typed in the portion of the Schedule, and the *1184 mutual intent to of the parties to the insurance contract with regard to aggregate.
113The trial court found National Union’s policy to be ambiguous and interpreted the policy as if it placed no aggregate limit on the amount of personal injury liability coverage. In its reasons for judgment, the trial court noted that the placement of the number on the schedule does not logically fit into either column, and observed that National Union argued that the number actually belonged in the “Limits of Liability” column but was inadvertently typed into the form a few inches to the left. The trial court observed that if this supposition were accepted as fact, then the limits of liability would be $500,000,000.00.
Our de novo review of the policy convinces us that National Union’s policy is ambiguous. A fair reading of the policy discloses that National Union meant to limit its coverage, but there is a genuine issue of material fact whether the aggregate limit is $500,000.00 or $500,000,000.00. Indeed, the trial court correctly noted that the positioning of the 500,000 is “inexplicable” and supports the existence of a genuine issue of material fact. National Union raised genuine issues of material fact that preclude summary judgment in favor of the plaintiffs. The trial court, however, bypassed further analysis and the required application of the rules governing the interpretation of contracts, misapplied the rule of strict construction, misconstrued National Union’s policy in favor of unlimited PIL coverage, and granted improvidently the plaintiffs’ motion for summary judgment. Because the material issue of fact related to this policy’s limits cannot be resolved by summary judgment, it must be resolved after a trial on the merits.
B
We next examine the policy issued by Republic to HANO. Republic’s policy with HANO defines its personal injury liability coverage accordingly:
114The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of pei’sonal injury or advertising injury to which this insurance applies ... but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company’s liability has been exhausted by payment of judgments or settlements.
Republic’s policy with HANO also provides the following limitation of liability clause:
Regardless of the number of (1) insureds hereunder, (2) persons or organizations who sustain injury or damages, or (3) claims made or suits brought on account of personal injury or advertising injury, the total limit of the company’s liability under this coverage for all damages shall not exceed the limit of liability stated in this endorsement as “aggregate.”
Instead of setting out a dollar amount, the aforementioned endorsement points the reader to a different form, to wit:
Personal Injury and Advertising Liability
Aggregate Limit shall be the per occurrence bodily liability limit unless otherwise indicated herein.
Limit of Liability $ See L639ía Aggregate.
Republic’s Form L6394a, entitled “Comprehensive General Liability Insurance,” sets out a single dollar amount. Specifically, the “Limits of Liability” section on Form L6394a is comprised of two columns, one named “each occurrence,” and the other named “aggregate.” The line pertaining to bodily injury liability indicates that the per occurrence limit is $1,000,000.00 *1185 while the aggregate limit is expressed as “nil.”
The plaintiffs argued to the trial court that Republic’s policy is ambiguous on this point because the endorsement provides for at least two possible, and differing, aggregate limits. The plaintiffs assert that the endorsement first indicates that the PIL coverage’s aggregate limit shall be the “per occurrence |1sbodily injury liability limit unless otherwise indicated herein.” The plaintiffs next assert that the notation directing the reader to a different limit found in Form L6394a contradicts the foregoing statement. The plaintiffs further argue that Form L6394a is confusing because it fails to mention personal injury liability coverage, or specify any aggregate. Thus, the plaintiffs argued that Form L6394a is ambiguous because a reader cannot discern whether the PIL aggregate limit is the per occurrence bodily injury liability limit of $1,000,000.00 or whether it is “nil.” Republic argued that its policy unambiguously provided PIL coverage subject to an aggregate limit of $1,000,000.00.
In the alternative, Republic asserted that if the trial court were to find the policy ambiguous, extrinsic evidence, such as the policy binder, should be examined to ascertain the intent of the parties. Ruling for the plaintiffs, the trial court found Republic’s limitation of the policy’s PIL coverage to be ambiguous because it could not ascertain whether the limit of PIL coverage was the per occurrence bodily injury limit or “nil.”
Our de novo review of the policy convinces us that the trial court correctly held that Republic’s policy is ambiguous. Simply put, a fair reading of the policy reveals a genuine issue of material fact as to whether the reference to Form L6394a is for a $1,000,000.00 limit or no limit whatsoever. However, contrary to the trial court’s legal conclusion, the proper method of resolving this ambiguity is not to automatically construe the ambiguous language against Republic but instead to deny the plaintiffs’ motion for summary judgment. Accordingly, we conclude that the trial court erred when it found the policy ambiguous yet failed to deny the plaintiffs’ motion. The record reveals genuine issues of material fact that preclude summary judgment in favor of the plaintiffs.
JjiC
The final policy we examine is the one issued by U.S. Fire to HANO. U.S. Fire’s policy with HANO defines its personal injury liability coverage accordingly:
The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury (herein called “personal injury”) sustained by any person or organization and arising out of one or more of the following offenses committed in the conduct of the named insured’s business:
[[Image here]]
Group C — wrongful entry or eviction, or other invasion of the right of private occupancy;
If such offense is committed during the policy period within the United States of America, its territories or possessions, or Canada, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such personal injury even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company’s liability *1186 has been exhausted by payment of judgments or settlements.
U.S. Fire’s policy with HANO also provides the following limitation of liability clause:
Regardless of the number of (1) insureds under this policy, (2) persons or organizations who sustain personal injury, or (3) claims made or suits brought on account of personal injury, the total limit of the company’s liability under this coverage for all damages shall not exceed the limit of personal injury liability stated in the schedule as “aggregate.”
The schedule directs the reader to “See Endorsement # 1.” Endorsement # 1 provides for a single limit of liability of $100,000.00 per occurrence and for $100,000.00 aggregate. The last sentence of the endorsement, however, provides: “This endorsement does not apply to Personal Injury Liability Insurance coverage |17on this part.” The trial court agreed with the plaintiffs and found U.S. Fire’s policy to be ambiguous.
Our de novo review of U.S. Fire’s policy, however, convinces us that the policy unambiguously does not provide for an aggregate limit. Where the policy form provides a space to insert the amount of the aggregate limit for personal injury liability coverage, U.S. Fire instead inserted “See Endorsement # 1.” But Endorsement # 1 clearly and unambiguously provides that it does not apply to PIL coverage. Thus, as written, U.S. Fire’s policy with HANO fails to set out an aggregate limit for the PIL coverage.
Ordinarily, we would not go further in search of the intent of the parties beyond the unambiguous contractual language. But here there is an exceptional circumstance which does not necessarily result in a finding that U.S. Fire’s PIL coverage is unlimited.[6] In its opposition to the plaintiffs’ motion for partial summary judgment, U.S. Fire asserted that it is entitled to reformation of the policy to conform to the intent of it and its insured in the event the policy is found to be unambiguous.[7] As this court said in Hope v. S & J Diving, Inc., 08-282, pp. 7-8 (La.App. 4 Cir. 9/24/08), 996 So.2d 50, 54-55:
Louisiana has adopted the rule that a written insurance contract can be reformed to conform to the original intention of the parties. In Samuels v. State Farm Mut. [Automobile] Ins. Co., 06-0034 (La.10/17/06), 939 So.2d 1235, the Court stated: “As other written agreements, | isin sur anee policies may be reformed if, through mutual error or fraud, the policy as issued does not express the agreement of the parties.” Id., pp. 6-7, 939 So.2d at 1240, citing William Shelby McKenzie and H. Alston Johnson, III, Louisiana Civil Law Treatise: Insurance Law and Practice, Vol. 15, § 5, p. 14 (2nd Ed.1996); Earl *1187 Williams Const. Co. v. Thornton & Brooks, Inc., 501 So.2d 1037, 1039 (La.App. 2 Cir.), writ denied, 504 So.2d 881 (La.1987). “In the absence of fraud, the party seeking reformation has the burden of proving a mutual error in the written policy.” Id. “Parole evidence is admissible to show mutual error even though the express terms of the policy are not ambiguous.” Id. In Ferguson v. Belcher and Son, 230 La. 422, 88 So.2d 806 (1956), the Court indicated that “the burden is on the one seeking the reformation to prove the error, and he must carry said burden by clear, and the strongest possible proof.” Id. This requirement was modified in Bonadona v. Guccione, 362 So.2d 740 (La.1978), which held that the clear and convincing evidence of mutual mistake was necessary only when a party seeks to prove that the insurer had insured a substantially different and greater risk than that expressed by the written policy. Id. at 744. On the other hand, only the normal burden of proof by a preponderance of the evidence was required to reform a policy in a manner which did not substantially affect the risk assumed by the insurer. Id.
In support of their position, U.S. Fire attached the affidavit of Thomas Lyle Carlson, the underwriter for the U.S. Fire policy, to its opposition to the plaintiffs’ motion for partial summary judgment. The affidavit, unrefuted by the plaintiffs, clearly establishes that Mr. Carlson intended to reference the dollar amount of $100,000 shown in Endorsement No. 1 as annual aggregate limit of liability, not to insert the whole of Endorsement No. 1 into the space provided.[8] Thus, a genuine issue of material fact is established precluding the granting of the plaintiffs’ motion for summary judgment. Our jurisprudence recognizes, as the plaintiffs’ counsel conceded in oral argument, that raising the issue of reformation of the insurance contract in opposition to the motion for summary judgment is Insufficient to raise the issue as a defense to be considered by the courts. See Dubois v. FabCon, Inc., 02-1731, pp. 5-6 (La.App. 4 Cir. 5/21/03), 848 So.2d 679, 683-84; Walters v. Metropolitan Erection Co., 94-0162, 94-0475, pp. 6-7 (La.App. 4 Cir. 10/27/94), 644 So.2d 1143, 1147; see also West v. Ray, 210 La. 25, 26 So.2d 221 (La.1946); Boudreaux v. State, Dept. of Transp. and Development, 00-0050 (La.App. 1 Cir. 2/16/01), 780 So.2d 1163. By so raising the issue in U.S. Fire’s opposition, the plaintiffs have been given fair notice that the issue of reformation (error) is relevant and material if one is to assert that the contract of insurance is unambiguous.
Accordingly, the trial court erred when it granted the plaintiffs’ motion for summary judgment against U.S. Fire. At the trial on the merits, U.S. Fire will have an opportunity to prove mutual error in order to reform the unambiguously-worded policy. If unsuccessful in its proof, however, the policy must be enforced as written, i.e., without any aggregate limit.
DECREE
We reverse the trial court’s partial judgment in favor of the plaintiffs, finding that the personal injury liability portions of the policies issued by National Union, Repub- *1188 lie, and U.S. Fire to HANO contained no aggregate limit. We remand the matter for further proceedings consistent with this opinion.
REVERSED AND REMANDED
McKAY, J., concurs in part and dissents in part with reasons.

. The plaintiffs file separate motions for summary judgment as to each insurer, but the trial court rendered its decision in a single judgment granting summary judgment.

. In its brief, Republic states that its policy was effective until October 4, 1985. The judgment by the trial court on January 12, 2006 found that the policy was effective until May 31, 1985.

.Respectively: Johnson v. Orleans Parish Sch. Bd., 05-0796 (La.App. 4 Cir. 3/22/06), 929 So.2d 761; and Johnson v. Orleans Parish Sch. Bd., 05-1488 (La.App. 4 Cir. 8/9/06), 938 So.2d 219.

. Johnson VI also addressed damage awards made to specifically named individuals in various subclasses, which awards are now final and unappealable.

. Republic has not filed an exception of res judicata.

. While the policy is unambiguous, it is nevertheless illogical to incorporate the words of Endorsement No. 1 of the U.S. Fire policy into the PIL coverage. Further, it is illogical to incorporate words applicable to bodily injury and property damage coverages into a blank space left for the insertion of the amount on the PIL coverage portion of the policy. Whereas PIL coverage referenced Endorsement No. 1 in the blank space for the dollar amount of aggregate limits of liability applicable to PIL coverage, it is clear that reference is being made to the wording of the endorsement, not the dollar amount in Endorsement No. 1. U.S. Fire was not HANO's only insurer; American Universal Insurance Company provided an excess policy that provided HANO coverage over the $100,000 aggregate limit.

. The concept of reformation of a contract lies within the Civil Code articles respecting error, La. Civil Code. arts. 1948 and 1950, et seq.

. The affidavit was properly before the trial court as being attached to U.S. Fire's opposition to the plaintiffs' motion for partial summary judgment, and it is properly before us; all that is required is its formal and actual attachment to the written opposition (a pleading in fact) to be before the court for consideration. See La. C.C.P. Arts. 853, 966 and 967. The plaintiffs’ statement in brief that the affidavit is not properly part of the record before us is inexplicable.