890 So.2d 569 (2003)
Cory WICKRAMASEKRA
v.
ASSOCIATED INTERNATIONAL INSURANCE COMPANY.
No. 2002-CA-2474.
Court of Appeal of Louisiana, Fourth Circuit.
June 25, 2003.
Rehearing Denied September 9, 2003.
*570 Patrick J. Sanders, Metairie, LA, For Plaintiff/Appellant Cory Wickramasekra.
George B. Hall, Jr., G. Benjamin Ward, Phelps Dunbar, LLP, New Orleans, LA, for Defendant/Appellee Associated International Insurance Company.
(Court composed of Judge DENNIS R. BAGNERIS SR., Judge EDWIN A. LOMBARD, and Judge LEON A. CANNIZZARO, JR.).
DENNIS R. BAGNERIS, SR., Judge.
This case involves an appeal by the plaintiff from a summary judgment granted by the trial court in favor of the defendant. For the reasons set forth below, this Court affirms the trial court's judgment.

FACTS AND PROCEDURAL HISTORY
On March 20, 1999, the plaintiff, Cory Wickramasekra, was visiting an employee of The Palm's, Inc. (the "Palm's") at the *571 Palm's place of business. At the time of the visit, the employee was moving palm trees using a forklift, and he requested Mr. Wickramasekra's assistance. After approximately ten palm trees had been moved, the forklift injured Mr. Wickramasekra's foot. In an affidavit submitted by Mr. Wickramasekra to the trial court in connection with his motion for summary judgment, he stated "we had loaded/unloaded approximately 10 palm trees on and off the forklift for the purpose of moving the trees."
On March 13, 2000, Mr. Wickramasekra sued the Palm's, which is no longer in business, and its insurer, Associated International Insurance Company "Associated")[1], for damages resulting from the Palm's negligence in connection with the injury to Mr. Wickramasekra's foot. Associated had issued a commercial general liability insurance policy (the "Policy") to the Palm's for the policy period beginning August 7, 1998, and ending August 7, 1999.
On June 5, 2000, Associated filed an answer to the petition. In its answer Associated asserted several affirmative defenses, one of which was an exclusion from coverage under a "classification limitation" endorsement to the Policy. On December 10, 2001, Associated filed a motion for summary judgment on the grounds that the classification limitation endorsement to the Policy precluded coverage for Mr. Wickramasekra's claim. The classification limitation endorsement provided, in relevant part, that the Policy's coverage did not apply to bodily injury or medical payments arising out of operations that were not included on the declarations page of the Policy or on any endorsement or supplement to the declarations page. The declarations page of the Policy lists "loading and unloading of equipment" as the operation that is covered by the Policy.
On January 17, 2002, Mr. Wickramasekra filed a motion for summary judgment on the issue of insurance coverage. He sought a summary judgment holding that the Policy afforded coverage for his injuries.
On May 31, 2002, both the motion for summary judgment by Associated and the motion for summary judgment by Mr. Wickramasekra were heard. In a Judgment dated July 15, 2002, Associated's motion was granted, Mr. Wickramasekra's motion was denied, and all of his claims against Associated were dismissed with prejudice. Although the trial court did not issue written reasons for his judgment, the transcript of the hearing on the motions for summary judgment indicated that the trial court found that the palm trees being moved by the forklift were not "equipment" as that term was used in the phrase "loading and unloading of equipment" in the Policy.
Mr. Wickramasekra is now appealing the summary judgment that the trial court granted in favor of Associated. He contends that the court erred in finding that palm trees were not equipment and in not finding that the forklift that was being loaded and unloaded with the palm trees was, in fact, equipment.

STANDARD OF REVIEW
The Louisiana Supreme Court discussed the standard of review of a summary judgment as follows in Independent Fire Insurance Co. v. Sunbeam Corp., 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226:

*572 Our review of a grant or denial of a motion for summary judgment is de novo. Schroeder v. Board of Sup'rs of Louisiana State University, 591 So.2d 342 (La.1991). A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B).
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at the trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La.C.C.P. art.966 C(2).
An adverse party to a supported motion for summary judgment may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided by law, must set forth specific facts showing that there is a genuine issue of material fact for trial. La.C.C.P. art. 967; Townley v. City of Iowa, 97-493 (La.App. 3 Cir. 10/29/97), 702 So.2d 323, 326.
The amended article 966 substantially changed the law of summary judgment. Under the prior jurisprudence, summary judgment was not favored and was to be used only cautiously and sparingly. The pleadings and supporting documents of the mover were to be strictly scrutinized by the court, while the documents submitted by the party in opposition were to be treated indulgently. Any doubt was to be resolved against granting the summary judgment, and in favor of trial on the merits. This jurisprudential presumption against granting the summary judgment was legislatively overruled by La.C.C.P. art. 966 as amended. The amendment levels the playing field between the parties, with the supporting documentation submitted by the parties to be scrutinized equally and the removal of the overriding presumption in favor of trial. Under the amended statute, the initial burden of proof remains with the mover to show that no genuine issue of material fact exists. However, under La.C.C.P. art. 966(C), once mover has made a prima facie showing that the motion should be granted, the burden shifts to the non-moving party to present evidence demonstrating that material factual issues remain. Once mover has properly supported the motion for summary judgment, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion. The amendment to La.C.C.P. art. 966 brings Louisiana's standard for summary judgment closely in line with the federal standard under Fed. Rule Civ.Proc. 56(c). Hayes v. Autin, 96-287 (La.App.3 Cir. 12/26/96); 685 So.2d 691, 694, writ denied, 97-0281 (La.3/14/97), 690 So.2d 41. The summary judgment law was amended by La.Acts No. 483 of 1997 to incorporate the Hayes analysis.
Under Fed. Rule Civ.Proc. 56, when the nonmoving party bears the burden of proof at trial, there is no genuine issue of material fact if the nonmoving party cannot come forward at the summary judgment stage with evidence of sufficient quantity and quality for a reasonable juror to find *573 that the party can satisfy his substantive evidentiary burden. In construing the federal summary judgment rule, the United States Supreme Court held that summary judgment shall be granted where the evidence is such that it would require a directed verdict for the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If a defendant in an ordinary civil case moves for summary judgment or a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other, but whether a fair-minded jury could return a verdict for the non-moving party on the evidence presented. Id. The Anderson court further held that the mere existence of a scintilla of evidence on the non-moving party's position would be insufficient; there must be evidence on which the jury could reasonably find for that party. In Lujan v. National Wildlife, 497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990), the court held that Fed. Rule Civ.Proc. 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof. Berzas v. OXY USA, Inc., 29,835 (La.App. 2 Cir. 9/24/97), 699 So.2d 1149, 1152-53; Martello v. State Farm Fire and Cas. Co., 96-2375 (La.App. 1 Cir. 11/7/97), 702 So.2d 1179, 1183-84, writ denied 98-0184 (La.3/20/98), 715 So.2d 1215.
A fact is material if it is essential to a plaintiff's cause of action under the applicable theory of recovery and without which plaintiff could not prevail. Generally, material facts are those that potentially insure or preclude recovery, affect the litigant's ultimate success, or determine the outcome of a legal dispute. Prado v. Sloman Neptun Schiffahrts, A.G., 611 So.2d 691, 699 (La.App. 4 Cir.1992), writ not considered 613 So.2d 986 (La.1993).
Based on the foregoing, this Court must conduct a de novo review in the instant case to determine whether the trial court committed error in granting summary judgment in favor of Associated. Both Associated and Mr. Wickramasekra agree on the underlying factual issues in this case.

DISCUSSION
On appeal, Wickramasekra contends the trial court erred by failing to recognize the ambiguity in the Classification Limitation Exclusion and by failing to construe the ambiguity against the insurer and in favor of coverage. Wickramasekra argues that the Classification Limitation Exclusion in the policy is ambiguous and that the trial court erred in concluding that coverage is excluded because the palms trees are not equipment.
An insurance policy is a contract and, as with all other contracts, it constitutes the law between the parties. Carney v. American Fire & Indemnity Co., 371 So.2d 815 (La.1979). If the policy wording at issue is clear and expresses the intent of the parties, the agreement must be enforced as written. Albritton v. Fireman's Fund Ins. Co., 224 La. 522, 70 So.2d 111 (1953).
An insurance contract is to be construed as a whole, and one portion thereof should not be construed separately at the expense of disregarding another. Benton Casing Service, Inc. v. Avemco Ins., 379 So.2d 225 (La.1979). If there is an ambiguity in a policy, then that ambiguity should be construed in favor of the insured and against the insurer. Albritton, 70 So.2d at 111. However, courts *574 have no authority to alter the terms of policies under the guise of contractual interpretation when the policy provisions are couched in unambiguous language. Monteleone v. American Emp. Ins. Co., 239 La. 773, 120 So.2d 70 (1960); Edwards v. Life & Cas. Ins. Co. of Tenn., 210 La. 1024, 29 So.2d 50 (1946); Pareti v. Sentry Indem. Co., 536 So.2d 417 (La.1988).
An insurance policy is an agreement between the parties and should be interpreted by using ordinary contract principles. Smith v. Matthews, 611 So.2d 1377, 1379 (La.1993). The parties' intent, as reflected by the words of the policy, determines the extent of coverage. Such intent is to be determined in accordance with the general, ordinary, plain and popular meaning of the words used in the policy, unless the words have acquired a technical meaning. La.Civ.Code art.2047; Louisiana Insurance Guaranty Association v. Interstate Fire & Casualty Co., 93-0911 (La.1/14/94); 630 So.2d 759, 763. If the policy wording at issue is clear and expresses the intent of the parties, the agreement must be enforced as written. Pareti v. Sentry Indemnity Co., supra. at 417, 420.
In the instant case, the policy's declaration page lists in the business description the following;

Business Description:

LOADING AND UPLOADING OF EQUIPMENT UNLOADING (HANDWRITING)

* * *
Also, contained in the policy was the following;

CLASSIFICATION LIMITATION
This endorsement modifies insurance under the following:

* * *

COMMERCIAL GENERAL LIABILITY COVERAGE PART PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
This insurance does not apply to "bodily injury", property damage", personal injury", advertising injury" or medical payment arising out of those operations or premises which are not classified or shown on the Commercial General Liability Coverage part Declaration, its endorsements or supplements

* * *
The ambiguity in the insurance policy which plaintiff seeks to create is illusory. Wickramasekra injured his foot when he was assisting in moving of palm trees using a forklift. Considering, the ordinary, general, plain or popular meaning of the word palm tree, we are unable to characterize or define a palm tree as equipment as defined by any dictionary. Based on this reasoning we find that the wording "LOADING AND UPLOADING OF EQUIPMENT" is unambiguous and clear. Thus, there is no genuine issue of material fact for trial. Wickramasekra's contention is without merit.
Accordingly, we affirm the judgment of the trial court.

AFFIRMED.
CANNIZZARO, J., dissents with reasons.
CANNIZZARO, J., DISSENTS WITH REASONS.
I respectfully disagree with the majority opinion. I do not think that the majority properly analyzed the provisions of the insurance policy at issue (the "Policy"). I would find that the relevant provisions of *575 the Policy are ambiguous and should be construed against the insurance company.
Because an insurance policy is a contract between the insured and the insurer, the Policy must be construed using the general rules of interpretation of contracts established in the Louisiana Civil Code. La. Civ.Code art.2045 et seq. A contract should be interpreted in accordance with the common intent of the parties. La. Civ.Code art.2045. Where the words of a contract are clear and unambiguous, the courts shall determine the intent from those words. La. Civ.Code art.2046. Also, unless the words are terms of art or technical terms, the intent of the parties is to be determined in accordance with the ordinary meaning of the words. La. Civ.Code art.2047. Where, however, a contract is ambiguous or contains provisions that can have different meanings, the contract must be interpreted so that such provisions are effective rather than ineffective. La. Civ.Code art.2049. Additionally, each provision in a contract must be interpreted in light of the other provisions. La. Civ.Code art.2050.
Where there is doubt or ambiguity regarding the meaning of a contract that cannot be resolved, the contract must be interpreted against the party who drafted it. La. Civ.Code art.2056. In the insurance context, this means that ambiguous policy provisions must be construed against the insurer who issued the policy. Louisiana Insurance Guaranty Association v. Interstate Fire and Casualty Co., 93-0911, p. 6-7 (La.1/14/94), 630 So.2d 759, 764. If, however, the policy wording at issue clearly and unambiguously expresses the intent of the parties, the policy must be enforced as written. Louisiana Insurance Guaranty Association, 93-9011, p. 7, 630 So.2d 764. Whether a contract is clear or ambiguous is a question of law. Id.
For an explanation of the rules of interpretation that Louisiana courts use to interpret insurance contracts, see generally Gedward v. Sonnier, 98-1688 (La.3/2/99), 728 So.2d 1265; Valentine v. Bonneville Insurance Co., 96-1382 (La.3/17/97), 691 So.2d 665; Ledbetter v. Concord General Corp., 95-0809 (La.1/6/96), 665 So.2d 1166, modified on other grounds, 95-0809 (La.4/18/96), 671 So.2d 915; Pareti v. Sentry Indemnity Co., 536 So.2d 417 (La.1988).
In Ledbetter the Supreme Court specifically addressed exclusionary provisions in insurance policies. The Court stated that "[e]xclusionary provisions in insurance contracts are strictly construed against the insurer, and any ambiguity is construed in favor of the insured." Ledbetter, 95-0890, p. 4; 665 So.2d at 1169.
In the instant case, the Policy contained the following coverage provision that read in pertinent part as follows:
COVERAGE
A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY
1. Insuring Agreement
a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury"[1] or "property damage" to which this insurance applies.
An endorsement to the Policy contained a restriction on coverage that read as follows:
CLASSIFICATION LIMITATION[2]
This insurance does not apply to "bodily injury", "property damage", *576 "personal injury", "advertising injury" or medical payments arising out of those operations or premises which are not classified or shown on the Commercial General Liability Coverage Part Declarations, its endorsements or supplements.
The Policy included a declarations page that described the Palm's business. The "business description" in the Policy was "loading and unloading of equipment".
The phrase "loading or unloading" was defined in the printed provisions of the Policy. The phrase was defined as follows:
"Loading or unloading" means the handling of property:
a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft, or "auto";
b. While it is in or on an aircraft, watercraft or "auto"; or
c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered:
but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".
The Policy also contained an "auto exclusion" provision. That provision provided, in relevant part, that the Policy did not apply to bodily injury "arising out of the ... use or entrustment to others of any `auto' ... owned or operated by or rented or loaned to any insured." The term "use", as used in the "auto exclusion" provision, was defined to include "loading or unloading" of a vehicle covered by the exclusion. The term "auto" was defined in the Policy to mean "a land motor vehicle, trailer or semitrailer designed for travel on public roads". The term "auto", however, specifically excluded forklifts.
Finally, the Policy provided that "words and phrases that appear in quotation marks have special meaning." The Policy then referred to the definitions section of the Policy for the meanings of the words and phrases in quotation marks.
At the summary judgment hearing in the instant case, Associated International Insurance Company ("Associated") argued that the word "equipment" used in the phrase "loading and unloading of equipment" on the declarations page of the Policy referred to items of equipment that were being loaded on and off of another object. Mr. Wickramasekra, however, contended that the same phrase referred to the loading and unloading of an object that must be a piece of equipment for coverage to apply, not to individual items of equipment being loaded or unloaded on or off of another object. Mr. Wickramasekra's position was that he was loading and unloading equipment with palm trees, not loading and unloading equipment that consisted of palm trees. The "equipment" being loaded and unloaded, according to Mr. Wickramasekra, was the forklift itself.
The trial court adopted the meaning of the phrase "loading and unloading of equipment" advocated by Associated. The trial court determined that the palm trees that were being moved by the forklift were not items of "equipment" as that phrase is normally understood. Therefore, the trial court found that the activity in which Mr. Wickramasekra was engaged when he was injured was not covered by the Policy, and summary judgment was granted in favor of Associated.
I agree with the trial court and the majority opinion that palm trees are not equipment. I do not, however, agree that Mr. Wickramasekra's injury is not covered by the provisions of the Policy. I believe that the Policy covers the activity of loading *577 and unloading a forklift, which clearly is equipment.
When the basic coverage provisions of the Policy are read with the business description on the declarations page of the Policy, it is clear that the Policy's coverage extended to bodily injury that arose out of loading and unloading of equipment. At issue is the meaning of the phrase "loading and unloading of equipment". The Policy did not define either the word "equipment" or the phrase "loading and unloading". The Policy did define a similar phrase, "loading or unloading"[3], but the definition of "loading or unloading" in the Policy was more restrictive than the usual meaning of that term. It is clear that the activity in which Mr. Wickramasekra was engaged was not covered by the defined term "loading or unloading"[4]. This does not mean, however, that the activity was not covered by the phrase "loading and unloading." The activity does not fall within the scope of the defined term, but it does fall within the scope of the phrase "loading and unloading" as that phrase is commonly understood.
Even if the exact phrase "loading or unloading" had been used on the declarations page of the Policy, the phrase would have had to be in quotation marks for the meaning of the defined term "loading or unloading" to have been applicable. The business description on the declarations page of the Policy was devoid of quotation marks even though other parts of the declarations page included other phrases in quotation marks, and the Policy clearly provided that the words and phrases in the Policy in quotation marks are the ones that have specified meanings.
Therefore, in accordance with the principles for the interpretation of insurance polices, "equipment" and "loading and unloading" must be interpreted using their ordinary meanings. See Louisiana Insurance Guaranty Association v. Interstate Fire and Casualty Co., 93-0911 (La.1/14/94), 630 So.2d 759. The ordinary meaning of the phrase "loading and unloading" is the placement and the removal of objects onto and from something capable of holding such objects. The ordinary meaning of the word "equipment" includes an implement used in an operation or activity.
In the instant case, placing the palm trees onto the forklift and removing the palm trees from the forklift comport with the ordinary meaning of the phrase "loading and unloading". Therefore, the activity in which Mr. Wickramasekra was engaged when he was injured can certainly be classified as "loading and unloading" within the ordinary meaning of that phrase.
The crucial question is whether Mr. Wickramasekra was engaged in "loading and unloading of equipment" at the time he was injured. Although I agree with the trial court that palm trees are not equipment in the ordinary sense of the word, I would find that the forklift was equipment within the word's ordinary meaning. Even in the Policy's definitions section, a forklift was included as an example in the definition of one type of equipment.
*578 Associated argues that the phrase "loading and unloading of equipment" refers to loading and unloading items or pieces of equipment. Although this is a reasonable argument, the meaning of the phrase advocated by Associated is not the only plausible meaning of the phrase. Mr. Wickramasekra argues that the forklift was the equipment being loaded and unloaded, and this argument is also a plausible interpretation of "loading and unloading of equipment". The principles applicable to interpreting insurance contracts mandate that any ambiguous provision in an insurance contract is to be construed against the insurance company that drafted the policy. Louisiana Insurance Guaranty Association v. Interstate Fire and Casualty Co., 93-0911 (La.1/14/94), 630 So.2d 759. Therefore, I would adopt Mr. Wickramasekra's position that the equipment that was being loaded and unloaded in the instant case was the forklift.
It may seem that the distinction I have made between the phrase "loading and unloading" and the defined term "loading or unloading" is unnecessarily technical. Precise language, however, must be used in insurance policies and other contracts so that the intent of the parties is clearly understood. When precise language is not used, as in the instant case, then the Louisiana Civil Code articles on the construction of contracts must be used to interpret the intent of the parties. Because it is specifically defined in the Policy, the term "loading or unloading" was given a special meaning as a term of art or technical term within the meaning of Louisiana Civil Code article 2047. That article requires the intent of the parties to be determined according to the ordinary meaning of the words used by the parties unless the words are terms of art or technical terms. The phrase "loading and unloading" is not defined in the Policy. Therefore, because the phrase "loading and unloading" is not defined and is not otherwise a term of art or technical term, it must be given its ordinary meaning. La. Civ.Code art.2047. The distinction between the phrase and the defined term in the instant case may be technical, but it is not unnecessarily technical. It is required by the law of Louisiana. See also La. Civ.Code art.2056. Further, the Ledbetter case, discussed above, mandates that imprecise language in an insurance policy must be strictly construed against the insurer.
Associated has also argued that the Policy's "auto exclusion" precludes coverage in the instant case. I would find that the phrase "loading and unloading" that is used on the declarations page of the Policy is not defined in the Policy's definitions section, which defines the phrase "loading or unloading". Because the ordinary meaning of the phrase "loading and unloading" does not comport with the narrow meaning of the defined term "loading or unloading" that is used in the Policy's "auto exclusion", I would conclude that the "auto exclusion" does not apply to the activity in which Mr. Wickramasekra was engaged at the time his foot was injured.
It is my opinion that at the time he was injured Mr. Wickramasekra was engaged in the activity of the loading and unloading of a forklift with palm trees and that the forklift was equipment that was being loaded and unloaded. Mr. Wickramasekra's loading and unloading of the forklift with palm trees was included within the scope of the phrase "loading and unloading of equipment" as used in the Policy. Therefore, I would find that the Policy affords coverage for the activity in which Mr. Wickramasekra was engaged when his foot was injured.
NOTES
[1] Mr. Wickramasekra filed an amended petition suing a second insurer. The suit against the second insurer was dismissed, because the policy issued by the second insurer did not provide coverage for Mr. Wickramasekra's claim.
[1] "Bodily injury" is defined in the Policy to mean "bodily injury, sickness or disease sustained by a person."
[2] The Policy contains two classification limitation endorsements, but both endorsements contain the same language.
[3] I have underlined the conjunctions "or" and "and" from time to time to indicate the difference between the phrase "loading and unloading" and the defined term "loading or unloading".
[4] Even the defined term "loading or unloading" is ambiguous. It appears to apply to property in transit via aircraft, watercraft, or "auto", as that term is defined in the Policy, but it is unclear when the insured would benefit from this coverage. What is clear, however, is that the activity in which Mr. Wickramasekra was engaged does not fall within the scope of the defined term.