ROSEMARY LEDET, Judge.
| ¶ This is an insurance coverage dispute. From the trial court’s judgment granting the motion for summary judgment filed by the third-party defendant, Houston Specialty Insurance Company (“Houston”), the third-party plaintiff, St. Tammany Holding Company, LLC (“THC”), appeals. For the reasons that follow, we affirm.
FACTUAL AND PROCEDURAL BACKGROUND
In September 2010, THC leased to the Louisiana Department of Transportation and Development (“DOTD”) approximately seventy of the three thousand acres of undeveloped vacant land that THC owned in St. Tammany Parish (the “Leased Property”). According to the lease agreement, the purpose of the lease was as follows:
The leased premises will be used as a mobilization, lay-down and staging area for DOTD and CPRA/OCPR [Coastal Protection and Restoration Authority of the State of Louisiana/Office of Coastal Protection and Restoration] projects to demolish, store, and degrade a portion of the Existing Twin Span Bridge across eastern Lake Pontchartrain between St. Tammany and Orleans Parishes, which is no longer open as a highway for vehicular traffic.[1]
|2The lease also provided for the placement on the Leased Property of “[t]wo (2) triple-wide jobsite trailers with heating and air conditioning systems, approximately thirty-six (36') feet in width by sixty (60') feet in length” for the use of DOTD’s *79 contractors. Thus, the purpose of the lease was to use the Leased Property as the staging area for DOTD’s contractors’ concrete crushing operations.
In January 2012, four individuals who reside in the residential area adjacent to the Leased Property (the “Plaintiffs”) commenced the instant suit against, among others, THC. The allegations contained in Plaintiffs’ petition pertinent to the instant coverage dispute are as follows:
• In connection with the demolition of the original 1-10 Twin Spans, [THC] entered into a lease in September 2010 with the DOTD, whereby an undeveloped portion of [THC’s property — the Leased Property] that is directly adjacent to Lakeshore Estates would be used as a staging area.
• Once bridge pieces are placed at the staging area, they are sorted, reduced in size, ground into smaller sizes, placed in metal rebar mattresses, and transported from the staging area to a land bridge in Lake Borgne and/or to Bayou Savage.
• The work performed by [DOTD’s contractors] ... produces extremely high levels of concrete dust and particulate matter composed of quartz and other forms of crystalline silica. Uncontrolled dust becomes airborne and is blown from the staging area. This dust accumulates on the properties of the Petitioners, including, but not limited to, on their homes, cars, boats, etc., in their pools and ponds, and in their homes. The airborne dust also causes adverse health effects to the Petitioners via contact to the skin and eyes and via inhalation.
• The work performed by [DOTD’s contractors] ... generates high level of vibrations and movement of the ground.... The vibrations, movement of the ground and/or pile driving has resulted in cracks at various points in the concrete slabs and homes of Petitioners.
• On a typical day and/or night, the dust, noise, and vibrations emanating from the concrete crushing operations can be seen, heard, and felt throughout the Areas of Concern. The dust, noise, and vibrations are sufficient to cause | ¡¡physical discomfort and annoyance to Petitioners, and any person of ordinary sensibilities, thereby constituting a nuisance.
• Pursuant to La. C.C. arts. 667-669, THC ... ha[s] an affirmative duty not to use the property in a manner that unreasonably deprives their neighbors of reasonable enjoyment of their neighboring home and/or property.
Plaintiffs prayed for injunctive relief, a declaratory judgment, class certification, and damages.
In April 2012, THC filed a third party demand against its insurer, Houston. In its third party demand, THC alleged that the following facts supported its claim: (i) it had answered and denied the allegations of Plaintiffs’ petition; (ii) it had incurred, and will continue to incur (despite its denial of liability), costs in defending Plaintiffs’ suit; (iii) Houston had in effect for the policy period of April 16, 2011, through April 16, 2012, a commercial general liability (“CGL”) policy that provided THC with defense and coverage for Plaintiffs’ alleged damages; (iv) THC notified Houston of Plaintiffs’ claim and made a demand for defense and coverage under its policy; (v) on March 16, 2012, Houston denied THC’s claim for coverage and defense. THC averred that Houston’s denial of coverage and defense was unreasonable, arbitrary, and capricious and prayed for penalties and attorneys’ fees under La. R.S. 22:1892. It also averred that Houston breached its *80 duty of good faith and fair dealing under La. R.S. 22:1973.
In response, Houston filed an answer admitting that it issued a policy of insurance to THC, that it was notified of Plaintiffs’ claims against THC, that certain demands had been made by THC, and that a written denial of coverage was made by Houston to THC in March 2012. Houston also filed a motion for summary judgment seeking dismissal of THC’s claims. In support of its motion, Houston submitted the following statement of uncontested facts:
|41. Plaintiffs have sued THC on allegations that it owned and leased immovable property (the Leased Property) to the DOTD and that it has legal liability arising out of the activities and operation of the DOTD and others on the Leased Property.
BUSINESS DESCRIPTION:
LOCATION NUMBER
1
CLASSIFICATION AND PREMIUM
2. There are no allegations that the legal liability of THC arises out of activities or operations conducted on the Leased Property by THC itself.
3. THC, in truth and fact, neither occupied the Leased Property nor performed any operations or activities of any nature on the leased property-
4. Houston issued a Commercial Lines Policy with a term of 4/16/11 to 4/16/12 to THC, but the policy provided inter alia:
NAMED INSURED ADDENDUM IT IS HEREBY AGREED AND UNDERSTOOD THAT THE NAMED INSURED SHALL READ AS FOLLOWS:
Tammany Dirt Company, LLC Tammany Holding Company Lakeshore Estates Building, Inc.
[[Image here]]
DIRT EXCAVATION & SALES
ADDRESS OR ALL PREMISES YOU OWN, RENT OR OCCUPY
3600 Lakeshore, Slidell, LA 70461
[[Image here]]
THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) AND ANY ENDORSEMENT^), COMPLETE THE ABOVE NUMBERED POLICY.
[[Image here]]
CLASSIFICATION LIMITATION
*81 This endorsement modifies insurance provided under the following part:
COMMERCIAL GENERAL LIABILITY COVERAGE PART
It is agreed and understood that COVERAGE under this policy is specifically limited to those operations described by the classification in the Commercial General Liability Declarations Page or endorsed hereon.
All other terms and conditions remain unchanged.
CLASSLIMIT101 (08/10)
5. Houston’s policy was applied for, ordered, and issued as a replacement policy for a policy held by Tammany Dirt Company for its dirt excavation activities on property separate and apart from the property which THC leased to DOTD.[2]
6. There are no allegations that the alleged legal liability of THC in this case results from any activities or operations of THC itself, and specifically there are no allegations that the alleged legal liability of THC arises out of “sand or gravel digging,” “excavation,” “vacant land,” or “distributors/no food or drink” by THC.
THC admitted that it had been sued by Plaintiffs, but it otherwise denied Houston’s statement of uncontested facts. Insofar as the policy is concerned, THC responded that the policy itself was the best evidence of its terms. THC also filed a | ficross motion for summary judgment seeking judgment against Houston on the issues of insurance coverage and defense, and statutory penalties and attorneys’ fees.[3]
*82 Following a hearing, the trial court on November 16, 2012, rendered judgment granting Houston’s motion for summary judgment and denying THC’s cross motion.[4] This appeal followed.
|7DISCUSSION
We recently summarized the law applicable to summary judgment on the issue of insurance coverage and the proper interpretation of insurance contracts in Orleans Parish School Bd. v. Lexington Ins. Co., 12-1686, pp. 8-10 (La.App. 4 Cir. 6/5/13), 118 So.3d 1203, 1211-12, stating:
Appellate courts review the grant or denial of a motion for summary judgment de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. This standard of review requires the appellate court to look at the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, to determine if they show that no genuine issue as to a material fact exists, and that the mover is entitled to judgment as a matter of law....
⅜ * ‡ ⅝ Hi *
Whether an insurance policy provides for, or precludes, coverage as a matter of law is an issue that can be resolved within the framework of a motion for summary judgment. Sumner v. Mathes, 10-0438, p. 6 (La.App. 4 Cir. 11/24/10), 52 So.3d 931, 935. Generally, the interpretation of an insurance policy is a question of law. Armenia Coffee Corp. v. American National Fire Ins. Co., 06-0409, p. 6 (La.App. 4 Cir. 11/21/06), 946 So.2d 249, 253. Likewise, the determination of whether a contract is clear or ambiguous is a question of law. Cadwallader v. Allstate Ins. Co., 02-1637, p. 4 (La.6/27/03), 848 So.2d 577, 580. On the other hand, when a contract is determined to be ambiguous, an issue of material fact exists; and the matter is not ripe for summary judgment. Johnson v. Orleans Parish School Bd., 10-1388, p. 11 (LaApp. 4 Cir. 12/20/11), 80 So.3d 1175, 1183 (citation omitted).
Id. We also summarized the elemental legal principles that govern the analysis of insurance policies, stating:
Is* An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Civil Code.
• The parties’ intent as reflected by the words in the policy determine the extent of coverage. Such intent is to be determined in accordance with the general, ordinary, plain and popular meaning of the words used in the policy, unless the words have acquired a technical meaning. LSA-C.C. Art. 2047.
• An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is *83 reasonably contemplated by its terms or so as to achieve an absurd conclusion.
• Absent a conflict with statutory provisions or public policy, insurers, like other individuals, are entitled to limit their liability and to impose and to enforce reasonable conditions upon the policy obligations they contractually assume.
• [I]f the policy wording at issue is clear and unambiguously expresses the parties’ intent, the insurance contract must be enforced as written. LSA-C.C. Art. 2046 (providing that when the words of a contract are clear, no further interpretation may be made to determine the parties’ intent).
• When the language of an insurance policy is clear, courts lack the authority to change or alter its terms under the guise of interpretation. The determination of whether a contract is clear or ambiguous is a question of law.
Id., 12-1686 at pp. 10-11, 118 So.3d at 1212-13 (quoting Louisiana Ins. Guar. Ass’n v. Interstate Fire & Cas. Co., 93-0911 (La.1/14/94), 630 So.2d 759, 763-64 (citations omitted)).
In this case, the trial court, in finding in Houston’s favor, relied solely on its determination that the Leased Property was not vacant land under the classification limitation endorsement. In so finding, the trial court provided the following oral reasons for its ruling:
The character of the land changed from vacant to non vacant land when you put that material on there and didn’t disclose that to 19your underwriter,[5] and I think that at that point in time you lost your coverage. So I find that there’s no coverage under this policy, so I will deny your summary judgment and grant their summary judgment.
On appeal, THC contends that the trial court erred in failing to consider two of the other listed classifications — sand or gravel digging and excavation.[6] It contends that the policy does not require that the listed operations be conducted by a named insured. THC further contends that the trial court erred in finding the undeveloped, vacant character of the Leased Property changed. THC still further contends that the trial court erred in failing to find *84 that Houston, at a minimum, had a duty to defend.
Houston counters that the trial court’s ruling is legally correct. In support, it emphasizes that its policy is a specialized policy because it contains a 1 ^classifications limitation endorsement. Under that endorsement, the policy provides coverage for liabilities arising out of the four specifically listed operations—excavation, sand and gravel digging, distributors—no food or drink, and vacant land— of only its insured—either the named insured, TDC, or the additional insureds, one of which is THC. Houston contends that none of the specifically listed operations are alleged to have been conducted by either THC of TDC on the Leased Property. Indeed, THC admits it conducted no operations on the Leased Property. Houston further contends that the Leased Property cannot be considered vacant land given “the very crux of the [P]laintiffs’ entire case is that their pristine residential environment adjacent to the once ‘vacant land’ has now been spoiled by the massive operations and activities of DOTD and/or its contractors—not any THC activities— on the land that used to be vacant.”
A classification limitation endorsement is essentially an exclusion that ties coverage to specifically listed operations of the insured. “Commercial general liability [CGL] policies are designed to protect the insured against losses to third parties arising out of the operation of the insured’s business. Consequently, a loss must arise out of the insured’s business operations in order to be covered under the policy issued to the insured.” 9A COUCH ON INS. § 129:2. A classification limitation endorsement “restricts coverage available under a CGL policy to specific operations of the insured while excluding coverage for activities falling outside the scope of those operations.” Joseph E.B. (Jeb) Stewart, Classification Limitations in Liability Insurance Policies, 54 No. 5 DRI For Def. 34 (May 2012) (“Stewart ”). This court has upheld the application of unambiguous classification limitation endorsements to preclude coverage. See Wickramasekra v. Associated Intern. Ins. Co., 02-2474, p. 7 (La.App. 4 Cir. 6/25/03), 890 So.2d 569, 574.
|nTo determine whether a classification limitation endorsement excludes coverage for a particular claim, it is necessary to consider the following four factors:
(1) the language of the classification limitation, which usually appears in an exclusionary endorsement;
(2) the classified operations, which appear on the declarations portion of the policy;
(3) the allegations contained in the complaint; and
(4) the law applicable to the claim for coverage.

Stewart, supra.

Applying those factors to the facts of this case, we first note that the classification limitation endorsement in Houston’s policy reads as follows: “It is agreed and understood that COVERAGE under this policy is specifically limited to those operations described by the classification on the Commercial General Liability Declarations Page or endorsed hereon.” The four classified operations listed on the declaration sheet of Houston’s policy are as follows: (1) Sand or Gravel Digging; (2) Excavation; (3) Vacant Land; and (4) Distributors-no food or drink.
The allegations contained in Plaintiffs’ petition pertinent to the instant insurance coverage dispute, as noted earlier in this opinion, are that the concrete crushing operations on the Leased Property generated noise, emitted high levels of concrete dust and particulate matter, and caused ground *85 vibrations. Plaintiffs further averred that the noise, dust, and vibrations were sufficient to cause nearby residents to suffer physical discomfort, annoyance, and damages. Plaintiffs averred that on a typical day, the noise, dust, and vibrations constituted a nuisance under La. C.C. arts. 667 to 669 and La. C.C. art. 2315. Plaintiffs alleged that THC, as a 112landowner-lessor, had an affirmative duty, under the nuisance articles not to use its property in a manner that unreasonably deprives its neighbors of reasonable enjoyment of their property. As cited in Plaintiffs’ petition, the law on which their claims against THC is based is the nuisance articles of the Civil Code.
As noted above, THC’s first argument regarding the classification limitation endorsement is that nothing in Houston’s policy limits the application of the classifications to operations by the insured. This argument is belied by the nature and purpose of a classification limitation endorsement, which is to tie the insured’s operations to the coverage. Stewart, supra. It is undisputed that no insured conducted any operations on the Leased Property. THC’s reliance on the other classifications — sand or gravel digging and excavation — is thus misplaced. The trial court correctly focused solely on the vacant land classification.
Houston’s policy is devoid of a definition of the term vacant land. THC contends that there is no Louisiana jurisprudence addressing the meaning of the term vacant land in the commercial insurance context; rather, the Louisiana jurisprudence addressing the issue does so in the context of a homeowner’s policy. See Foret v. Louisiana Farm Bureau Cas. Ins. Co., 582 So.2d 989 (La.App. 1st Cir.1991); Tolbert v. Ryder, 345 So.2d 548 (LaApp. 3d Cir. 1977). THC contends that the Louisiana jurisprudence addressing the issue defines vacant land by focusing on the lack of a permanent structure on the property. Likewise, THC points out that Houston’s corporate representative and senior underwriter, Paul Wesley Kyle, Jr., acknowledged in his deposition that one of the definitions of vacant land is land on which there are no permanent structures. THC contends that the Leased Property is undeveloped land with no permanent structures and that its alleged liability arises strictly because of its status as owner-lessor of vacant, | ^undeveloped land. Hence, THC contends that the trial court erred in finding that the character of its Leased Property changed.
Houston counters that the term vacant land has been defined by the jurisprudence in a “common sense fashion.” In support, Houston cites Foret, supra, as the leading Louisiana case on the issue. Houston also cites the definition of “vacant” in Black’s Law Dictionary, (9th ed.2009) (“Black’s ”), in which reference is made to “vacant land;” specifically, Black’s definition of the term is as follows:
1. Empty; unoccupied. <vacant office >. Courts have sometimes distinguished vacant from unoccupied, holding that vacant means completely empty while unoccupied means not routinely characterized by the presence of a human being. 2. Absolutely free, unclaimed, and unoccupied <vacant land>. 3. (Of an estate) abandoned; having no heir or claimant. — The term implies either abandonment or nonoccupancy for any purpose.

Black’s, supra.

Addressing the significance of the context — homeowner’s policy versus other types of liability insurance — in which the issue arises, a commentator notes:
Coverage under a homeowner’s insurance policy is often extended to any vacant land, other than farm land, *86 owned or rented by the insured. Other liability insurance contracts specifically encompass activities connected with vacant land, or less frequently, exclude coverage on the basis of vacancy. Keeping in mind the established rule that ambiguities in a policy are to be resolved against the insurer, courts have generally focused on the character of the risk intended to be assumed by the insurer, as well as on the plain, ordinary, dictionary definition of the word “vacant.”
K. Reynaga, What Constitutes “Vacant Land” Within Meaning of Liability or Property Insurance Policy Provisions, 47 A.L.R.5th 585 (1997). Regardless of the context in which the coverage issue arises, the principle of statutory construction that an undefined policy term should be construed based on the plain, ordinary meaning of the term applies. Indeed, this is a well-settled rule of statutory | ^construction that applies to insurance contracts. See Orleans Parish School Bd., supra (citing La. C.C. art.2047).
In Foret, supra, the homeowner’s policy at issue contained no definition of the term vacant land. Construing the term, the First Circuit reasoned:
The common or ordinary meaning of the term “vacant” is empty or unoccupied. Tolbert v. Ryder, 345 So.2d 548 (La.App. 3d Cir.1977), the only Louisiana case interpreting this policy provision, held that land on which 300 or more head of cattle grazed and on which farm buildings were located was not vacant.[7] “Vacant” is thus not synonymous with “uninhabited.”
The term “vacant” has been interpreted by Florida courts as meaning devoid of inanimate objects or permanently affixed structures. American Motorist Ins. Co. v. Steffens, 429 So.2d 335 (Fla. App.1983); O’Conner v. Safeco Ins. Co., 352 So.2d 1244 (Fla.App.1977); Hehemann v. Michigan Millers Mutual Ins. Co., 240 So.2d 851 (Fla.App.1970). For-et and Cheramie were in the process of permanently affixing the mobile home to the lot at the time of the accident. Although the process had not been completed, the lot was no more vacant than if a slab had been poured for construction of a home. The lot was not empty; it was occupied by the mobile home. The accident site thus was not an insured premises under the policy.
Foret, 582 So.2d at 990.
Using an ordinary and common meaning of the term, we find the Leased Property is not vacant land. The Leased Property, like the property in Foret, supra, is not empty; it is occupied. Pursuant to the terms of the lease, it is occupied by two triple-wide jobsite trailers for DOTD’s contractors. Moreover, as alleged in Plaintiffs’ petition and established by the photographs included in the petition, a large-scale concrete crushing operation is being conducted on the Leased Property, which is the staging area for that operation. Given these undisputed facts, based on an ordinary and common meaning of the term, we find the Leased Property is not |1fivacant land. Thus, as the trial court correctly concluded, the vacant land classification is inapplicable; and there is no coverage under the terms of Houston’s policy for Plaintiffs’ claims.
 Turning to the duty to defend, we find Houston has no duty to defend *87 because there is no coverage based on the allegations of the petition.[8] As this court has noted, “[i]t is settled that when an exclusion to a policy is applicable, the insurer owes no duty to defend or indemnify the insured.” Louisiana Citizens Property Ins. Corp. v. Age, 12-0805, p. 4 (La.App. 4 Cir. 11/28/12), 104 So.3d 675, 677 (citing Crabtree v. Hayes-Dockside, Inc., 612 So.2d 249, 251 (La.App. 4th Cir.1992)); see also Elliott v. Continental Casualty Co., 06-1505 (La.2/22/07), 949 So.2d 1247; Louisiana Stadium & Exposition District v. BFS Diversified Products, L.L.C. 10-0587 (La.App. 4 Cir. 9/15/10), 49 So.3d 49. As noted, a classification limitation endorsement is essentially an exclusion. Given our finding that there is no coverage based on the classification limitation endorsement, we find there is no duty to defend.
Our finding that Houston has neither a duty to defend nor to indemnify THC makes it unnecessary for us to address THC’s claim for penalties and attorneys’ fees under La. R.S. 22:1892 and La. R.S. 22:1973. Accordingly, we find the trial court did not err in granting Houston’s motion for summary judgment and denying THC’s cross motion for summary judgment.

DECREE

For the forgoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.

. The original I — 10 Twin Span Bridge, which connected Orleans and St. Tammany Parishes over a portion of Lake Pontchartrain, was damaged in August 2005 by Hurricane Katrina.

. Tammany Dirt Company, LLC (“TDC”), THC’s wholly owned subsidiary, was formed in 2010 to perform dirt excavating activities. TDC initially obtained insurance from James River Insurance Company for the term April 16, 2010 to April 16, 2011. In its application for insurance with James River, TDC’s representative stated that all of its business operations at the premises were for dirt excavation and sales. In his deposition, THC's manager, Joseph Durel Landry, testified that when the James River policy expired, TDC desired to obtain similar coverage from Houston.

. In support of its motion, THC submitted the following statement of uncontested facts:
1. Houston issued a Commercial General Liability policy to THC, which was effective from April 16, 2011 to April 16, 2012 and covers the period plaintiffs allegedly sustained personal injuries and property damage.
2. THC’s liability is limited in this suit to its status as landowner/lessor.
3. THC put Houston on notice of this claim on February 6, 2012.
4. THC’s policy with Houston covers claims made by Plaintiffs in this matter.
5. THC tendered the defense of this matter to Houston, but Houston rejected and continues to reject this tender.
6. No evidence has ever been discovered in this matter that would unambiguously exclude coverage for THC under Houston’s policy.
7. When THC tendered its defense to Houston, Houston had sufficient information to know whether it should accept Houston’s defense.
8. It has been over sixty days since THC tendered its defense to Houston.
9. Plaintiffs allege the land on which the activities are being conducted is “undeveloped.”
10. Houston admits that a definition of "vacant land” is land without any permanent buildings.
11. There are no permanent buildings on the land involved herein.
12. Plaintiffs allege that crystalline silica, a component of sand, is being carried through the air from the land involved herein causing personal injuries and property damages.
13. Houston's policy does not define any of the operations set forth in its Classification Limitations.
14. NASDI, one of DOTD’s contractors, is using five excavators on the project.
15. Houston has not alleged any policy exclusions preclude coverage in this matter.
*82 16. Houston’s denial of coverage and defense is arbitrary, capricious, and without probable cause.

. The trial court also certified as final for purposes of appeal, pursuant to La. C.C.P. art.1915, the judgment denying the cross motion for summary judgment filed by the third party plaintiff, THC. See Marseilles Homeowners Condominium Ass’n, Inc. v. Broadm-oor, L.L.C., 12-1233, p. 3 (La.App. 4 Cir. 2/27/13), 111 So.3d 1099, 1103, n. 3 (noting that "in the context of cross-motions for summary judgment, a party may obtain appellate review of the judgment denying its motion when it appeals the judgment which granted the opposing party relief on the issue” and citing Favrot v. Favrot, 10-0986, p. 2 (La.App. 4 Cir. 2/9/11), 68 So.3d 1099, 1102 n. 1).

. On April 9, 2012, Katrina Darcey, the insurance agent's account manager, sent the following email to the Houston's regarding a renewal quote for THC for the following year:
Please revise your quote to reflect the change below as per your email. Also, of the 3000 acres of vacant land 70 acres is leased to the Louisiana Department of Transportation. Please review your quote to include LRO for 70 acres.
Houston’s underwriter responded the following day by email, stating:
Based upon the exposures below, we prefer to withdraw our quote as we do not have any intent to pick up the following exposures:
The insured now leases 70 acres of the 3000 acres to the Louisiana Department of Transportation. The Louisiana Department of Transportation leases the 70 acres to Nasdi, LLC and Bertucci Contracting Company, LLC. Nasdi, LLC was hired by the LA DOT to demo an old bridge and Nasdi, LLC transports the concrete from the demand bridge to the 70 acres and breaks the concrete into smaller pieces. Bertucci Contracting Company, LLC then puts the broken concrete in metal baskets and transports it to Lake Borne where they will line the shoreline of Lake Borne to help prevent erosion. NOTE: The only involvement Tammany Holding Company, LLC has is they own the 3000 acres of land.
Since we are very close to the renewal date, I will provide you with a 30 day quote, should you need additional time to replace this coverage. Please remember that the classification limitation endorsement is included with this quote, per expiring.

. The inapplicability of the other classification besides "vacant land” — "distributors—no food or drink” — is not disputed.

. In Tolbert v. Ryder, 345 So.2d 548 (La.App. 3d Cir.1977), the defendants argued that the homeowner's policy afforded coverage to vacant land. Rejecting that contention, the Third Circuit reasoned that "[t]he land in question had farm buildings on it, and the Ryders conducted a cattle operation thereon to the extent of running between three and four hundred head of cattle on this property.” Ryder, 345 So.2d at 553.

. Contrary to THC's contention, we find the trial court implicitly made this same finding.